# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-2207

_____

United States of America

*Plaintiff - Appellee*

v.

Emmanuel Robinson

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: September 24, 2020
Filed: December 18, 2020

_____

Before KELLY, WOLLMAN, and STRAS, Circuit Judges.

_____

KELLY, Circuit Judge

Emmanuel Robinson was convicted after trial on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He raises two arguments on appeal. First, he claims that the district court[1] erred in

---

[1]The Honorable Judge Howard F. Sachs, United States District Judge for the Western District of Missouri.

denying his motion to suppress evidence obtained during his arrest. Second, he argues that the district court[2] erred at trial by not requiring the government to prove that he knew he was in a category of persons prohibited from possessing a firearm. See Rehaif v. United States, 139 S. Ct. 2191, 2200 (2019). After carefully considering both of these arguments, we affirm.

I.

On March 10, 2017, Detectives William Hooley and David Kellgren with the Kansas City, Missouri Police Department went to a used car lot and repair shop in Kansas City to speak with a man named Davionne Harvey. When they arrived, the detectives, who were not in uniform, spotted Harvey in the parking lot and approached him. Harvey agreed to talk to them, but said he first wanted to give a ring of keys to "one of his guys." Harvey walked toward another man in the parking lot, later identified as Robinson, and handed him the keys. As Harvey turned to walk back toward the detectives, Robinson shoved him in the back, causing him to stumble forward, and yelled, "Are we going to do this right here? Are we going to do this right now?" As he yelled, Robinson motioned toward his waistband in a way the detectives associated with a move to draw a weapon. The detectives identified themselves and told Robinson to stop and back up. Robinson began to retreat but kept his hand at his waistband the entire time. At that point, the detectives separated Harvey and Robinson. Detective Kellgren frisked Robinson and found a gun in his waistband. The detectives then ran a computer check on Robinson, learned that he had previously been convicted of a felony, and arrested him.

Following his arrest, Robinson was indicted on one count of being a felon in possession of a firearm. He moved to suppress evidence of the firearm, arguing it

[2]The Honorable Judge David Gregory Kays, United States District Judge for the Western District of Missouri.

-2-

was seized as a result of an unlawful search. After an evidentiary hearing at which both detectives and Harvey testified, the magistrate judge recommended the motion be denied. The district court adopted the recommendation and denied the motion.

Robinson's case proceeded to trial. Among other evidence, the government introduced records of Robinson's seven prior felony convictions.[3] Robinson called Harvey as a witness. After Harvey testified, the district court called a recess and excused the jury from the courtroom. The court then discussed with Robinson his right to testify. The following exchange occurred between Robinson and the court:

> THE COURT: If you decide to testify, that doesn't mean you get to talk about anything you want to talk about, right? . . . [Y]ou can't just get up here and say whatever you want to say. Otherwise, you're not going to be testifying.
>
> THE DEFENDANT: I was going to say that I was – I was instructed that my rights was reinstated, that my right to bear arms was reinstated. I was instructed that there's – that felons in Missouri can possess weapons, that they can – that they got a right to bear arms. This is all that I've – that I've – that I've know.
>
> THE COURT: That's not relevant.
>
> THE DEFENDANT: I know. And it's not relevant. So if I can't get up and say how come I believe me possessing a weapon is not a crime, according to the law of Missouri law, then there's no – like I don't have no out. If this is a federal crime to possess a weapon – for a felon to possess a weapon and not a state crime, then where do we draw the lines at?

---

[3]Robinson declined to stipulate that he had one or more prior felony convictions.

THE COURT: Let me orient you here a little bit. Let me talk to you about – we have a thing called the elements of the crime. So let me just go through this with you. Here is the elements that the jury is going to consider. Number one, whether or not the defendant had been previously convicted of a crime punishable by imprisonment for a term exceeding one year. Right?

THE DEFENDANT: Yeah.

THE COURT: That's the first element. Element two, whether the defendant thereafter knowingly possessed a firearm, a Taurus Model PT840C. They're going to – they're going to have to decide that element. The third element, whether the firearm was transported against – across a state line at some time during or before the defendant's possession of it. They'll have to decide that element. That's what they're going to decide. Anything else is not really relevant to this. So I just want you to be – understand what our inquiry is, because I feel like you're trying to put some more information in here that I'm not going to allow the jury to consider. And if you say it, I'm going to go, ladies and gentlemen of the jury, you can't consider it.

THE DEFENDANT: You can't consider my state of mind at the time of the offenses which you –

THE COURT: Other than whether you knowingly possessed a firearm. And by the way, it's not legal in the state of Missouri for felons to possess firearms. Okay? Just so we're clear on that. So anyway. Yes, sir.

Robinson complained that he would be limited in his testimony, and the district court responded, "Yeah. Every defendant who testifies is limited." Robinson then explained again what he wanted to say on the stand:

THE DEFENDANT: [I want to testify that] according to my knowledge of the law, that I wasn't – I – felons can possess –

-4-

actually – after my paper – five years after my paper, I was told that my Second Amendment right was automatically reinstated.

THE COURT: Okay.

THE DEFENDANT: They never did say on none of these stipulations or these records that they got – they say stay away from drugs. They never said that I would never be able to possess – or bear arms again. They never said that.

THE COURT: Okay. So –

THE DEFENDANT: So –

THE COURT: Go ahead.

THE DEFENDANT: – until I got in federal custody again, I felt like that was federal custody – that according to the federal government, even if the state says a felon can possess a weapon, the federal government can say you can't. I just now realized this during this case.

THE COURT: Okay.

THE DEFENDANT: So, yeah, according to my knowledge of the law, yeah, felons in Missouri could possess weapons.

…

THE COURT: Okay. So this is a big decision. You – you understand that I will not allow the testimony – your testimony about you thought you had the right to possess a firearm, and we will not allow the testimony that you were in fear and you had the gun for personal protection. Those are not defenses to this particular crime. And if I limit those two, it's your choice not to testify; is that a fair statement?

(Defendant conferred with counsel.)

THE DEFENDANT: If I can't tell my side of the story, then I don't get to testify.

Robinson ultimately decided not to testify.

The district court instructed the jury that to find Robinson guilty, they had to find, among other elements, that "the defendant had been previously convicted of a crime punishable by imprisonment for a term exceeding one year." The instruction did not require the government to prove that Robinson knew that he fell into the category of persons who "had been previously convicted of a crime punishable by imprisonment for a term exceeding one year." Neither party objected to this instruction. The jury returned a guilty verdict, and Robinson now appeals.

II.

First, Robinson appeals the district court's denial of his motion to suppress. He argues that, when they separated him from Harvey, the detectives lacked reasonable suspicion to conduct a Terry stop and frisk. We review the district court's legal conclusions de novo and its factual findings for clear error. United States v. Morris, 915 F.3d 552, 555 (8th Cir. 2019).

Under Terry v. Ohio, 392 U.S. 1 (1968), police officers may stop and briefly question a person if they have "a reasonable, articulable suspicion" that the person is engaged in criminal activity. United States v. Banks, 553 F.3d 1101, 1104 (8th Cir. 2009). During a Terry stop, officers may also conduct a pat-down if they "reasonably suspect that the person stopped is armed and dangerous." Arizona v. Johnson, 555 U.S. 323, 326–27 (2009). For such a frisk to be permissible under Terry, there must be "specific and articulable facts which, taken together with the rational inferences from those facts," would lead a reasonable officer to believe that "the suspect is

dangerous and the suspect may gain immediate control of weapons." United States v. Rowland, 341 F.3d 774, 783 (8th Cir. 2003) (quoting Michigan v. Long, 463 U.S. 1032, 1049 (1983)).

Here, the detectives saw Robinson shove Harvey and shout threatening words at him—itself potentially a crime under Missouri law. See Mo. Rev. Stat. § 565.056 (2020) ("A person commits the offense of assault in the fourth degree if . . . [t]he person knowingly causes physical contact with another person knowing the other person will regard the contact as offensive or provocative."). Because the detectives witnessed Robinson committing what looked like an assault, they had reasonable suspicion to conduct a Terry stop. See Banks, 553 F.3d at 1104 (finding officers had reasonable suspicion to make a Terry stop because they saw the defendant committing a misdemeanor in their presence). To support his argument that the officers lacked reasonable suspicion, Robinson cites Harvey's testimony that the physical contact between them was just "play." But there is no reason the detectives would have known that when they intervened. We view the circumstances of a Terry stop "under an objective standard," United States v. Ellis, 501 F.3d 958, 961 (8th Cir. 2007), and Harvey's explanation does not negate the detectives' reasonable suspicion that "criminal activity was afoot." United States v. Williams, 929 F.3d 539, 545 (8th Cir. 2019). Because the shove was accompanied by Robinson keeping his hands by his waistband, suggesting that he was preparing to draw a weapon, the detectives also had sufficient reason to believe that Robinson was armed and posed a danger. Cf. United States v. Cotton, 782 F.3d 392, 396 (8th Cir. 2015) (citing a suspect "mak[ing] a motion with his hands to his front waistband" as partial support for officers' reasonable suspicion that the suspect was dangerous).

The stop and protective frisk of Robinson were justified under Terry, and we affirm the district court's denial of his motion to suppress.

III.

Second, Robinson argues that, in light of Rehaif v. United States, the evidence presented at trial was insufficient to convict him. In Rehaif, the Supreme Court held that "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct. at 2200. At Robinson's trial, which took place six months before Rehaif was decided, the jury was not instructed that it had to find that Robinson "knew he belonged to the relevant category of persons"—here, persons who have previously been convicted of a crime punishable by a term of imprisonment exceeding one year. In addition, the district court excluded as irrelevant his proffered testimony, by which he sought to explain that at the time of his arrest he believed he was allowed to carry a firearm. Robinson argues that, after Rehaif, this ruling was in error.

We construe Robinson's challenge on appeal as one to the district court's jury instructions, cf. United States v. Hollingshed, 940 F.3d 410, 415 (8th Cir. 2019); United States v. Owens, 966 F.3d 700, 706 (8th Cir. 2020), and we apply plain error review. Hollingshed, 940 F.3d at 415 ("Because [the defendant] failed to challenge the lack of a jury instruction regarding his knowledge of his felony status, we review his claim for plain error."). Plain error requires that a defendant show "(1) error, (2) that is plain, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Bonnell, 932 F.3d 1080, 1082 (8th Cir. 2019) (cleaned up).[4]

---

[4]If we construe Robinson's argument as a challenge to the district court's evidentiary ruling that Robinson's proffered testimony was irrelevant, our review would be "for clear abuse of discretion," and we would "not reverse if the error was harmless." United States v. Hyles, 479 F.3d 958, 968 (8th Cir. 2007). For the reasons discussed in this opinion, the outcome would be the same.

The "absence of an instruction requiring the jury to find that [the defendant] knew he was a felon" constitutes (1) an error (2) that is plain. Hollingshed, 940 F.3d at 415 (quoting United States v. Benamor, 937 F.3d 1182, 1188–89 (9th Cir. 2019)). Because the district court gave no such instruction, Robinson has met prongs one and two of our plain error test.

The more difficult question is whether Robinson has demonstrated that the error affected his substantial rights. To do so, Robinson "must show a reasonable probability that, but for the error, the outcome of the proceeding would have been different." Rosales-Mireles v. United States, 138 S. Ct. 1897, 1904–05 (2018) (cleaned up). In this case, Robinson was convicted under 18 U.S.C. § 922(g)(1), which prohibits any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" from possessing a firearm. At trial, the government presented evidence that Robinson had been convicted of seven such crimes. There is a limited exception, however, to the type of conviction that qualifies under the statute. Specifically, the term "crime punishable by imprisonment for a term exceeding one year" does not include "[a]ny conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored." 18 U.S.C. § 921(a)(20). Convictions that fall into this category are not considered qualifying convictions under § 922(g)(1) "unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." Id. In other words, pursuant to § 921(a)(20), a person who has been convicted of a felony but has had his rights restored does not actually have a qualifying conviction for § 922(g)(1)—and is therefore not in "the relevant category of persons barred from possessing a firearm." Rehaif, 139 S. Ct. at 2200.

After Rehaif, it may be that a defendant who genuinely but mistakenly believes that he has had his individual rights restored has a valid defense to a felon-in-possession charge under this provision. See id. at 2198 (explaining that "where a

-9-

defendant has a mistaken impression concerning the legal effect of some collateral matter and that mistake results in his misunderstanding the full significance of his conduct," such a showing can "negat[e] an element of the offense" (quotations omitted)). Relying on this possibility, Robinson argues that his proffered testimony is sufficient to meet his burden of demonstrating a reasonable probability that, but for the jury instruction error, the result of his trial would have been different. Cf. United States v. Crumble, 965 F.3d 642, 645 (8th Cir. 2020) (finding that, because the defendant "offer[ed] no evidence to show" that he reasonably could have believed that his prior conviction was excepted pursuant to § 921(a)(20), he failed to meet his burden "to prove that his substantial rights were affected by the Rehaif error"); see also United States v. Russell, 957 F.3d 1249, 1253–54 (11th Cir. 2020) (holding that, where "the district court's error effectively precluded [the defendant, who had "consistently challenged the nature of his immigration status"] from mounting any defense about his knowledge of his immigration status," the defendant had met all prongs of plain error review).

Even if we assume that this defense was available to Robinson, we disagree with his characterization of his proffered testimony. In his colloquy with the district court, Robinson repeatedly explained that he thought he was allowed to possess a firearm because he believed that "felons in Missouri can possess weapons." Rather than going to Robinson's knowledge of whether he in fact fell in the relevant category of prohibited persons under § 922(g), these statements indicate that Robinson had "the requisite mental state in respect to the elements of the crime, but claim[ed] to be unaware of the existence of a statute proscribing his conduct." Rehaif, 139 S. Ct. at 2198 (cleaned up). In other words, Robinson claimed ignorance of applicable law. Id. While Rehaif makes clear that the government must prove that a defendant knew he was in the category of persons prohibited under federal law from possessing firearms, Rehaif did not alter the "well-known maxim that 'ignorance of the law' (or a 'mistake of law') is no excuse." Id.; cf. United States v. Maez, 960 F.3d 949, 954 (7th Cir. 2020) ("We do not read Rehaif as imposing a willfulness requirement on §

922(g) prosecutions."); <u>United States v. Singh</u>, 979 F.3d 697, 727–28 (9th Cir. 2020) (holding that, after <u>Rehaif</u>, "the Government must prove only that [the defendant] knew, at the time he possessed the firearm, that he belonged to one of the prohibited status groups enumerated in § 922(g)"—not that "he knew his status prohibited him from owning a firearm").  Accordingly, even if the jury had been properly instructed and Robinson had been permitted to present his proffered testimony, the jury's verdict would have remained the same.

Because Robinson has not shown that, but for the error in the jury instructions, the outcome of his case would have been different, he cannot establish plain error.

IV.

The district court's judgment is affirmed.

_____