**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 23, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

RONALD BENTON,

    Defendant - Appellant.

No. 20-6023

_____

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:18-CR-00306-SLP-1)**
_____

Timothy C. Kingston, Law Office of Tim Kingston LLC, Foley, Alabama, for Defendant
– Appellant.

Wilson D. McGarry, Assistant United States Attorney (Timothy J. Downing, United
States Attorney, with him on the brief), Oklahoma City, Oklahoma, for Plaintiff –
Appellee.
_____

Before **McHUGH**, **KELLY**, and **EID**, Circuit Judges.
_____

**McHUGH**, Circuit Judge.
_____

A jury found defendant-appellant Ronald Benton guilty of one count of possession

of a firearm by a person convicted of a misdemeanor crime of domestic violence, in

violation of 18 U.S.C. § 922(g)(9). The district court imposed a sentence based on the

penalty found in 18 U.S.C. § 924(a)(2). Mr. Benton challenges his conviction on multiple grounds. Each of these grounds, however, is predicated on accepting his proposed interpretation of the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019). Specifically, Mr. Benton argues that, under *Rehaif*, the government was required to prove not only that he knew he was a domestic violence misdemeanant, but also that he knew that status prohibited him from possessing a firearm. Mr. Benton contends his conviction must be vacated because the jury was not instructed it must find he knew he was prohibited from possessing a firearm, and because the government presented insufficient evidence concerning his knowledge that he was so prohibited.

We reject Mr. Benton's interpretation of *Rehaif* and hold that in a prosecution under §§ 922(g) and 924(a)(2), the government need not prove a defendant knew his status under § 922(g) prohibited him from possessing a firearm. Instead, the only knowledge required for conviction is that the defendant knew (1) he possessed a firearm[1] and (2) had the relevant status under § 922(g) at the time of his possession. Because we reject Mr. Benton's proposed interpretation of *Rehaif*, we further reject his challenges to the jury instructions and the sufficiency of the evidence. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm his conviction.

---

[1] The knowledge that defendant is in possession of a firearm also requires that the defendant know the object he possesses is a firearm. *See Rehaif v. United States*, 139 S. Ct. 2191, 2196 (2019). Because that knowledge is not at issue in this case, we do not separately address it.

2

# I. BACKGROUND

## A. *Factual History*

In May of 2018, Mr. Benton went to a gun store located in the Western District of Oklahoma. The manager of the store showed Mr. Benton several firearms, and Mr. Benton selected one for purchase. He returned to the store the following week and took possession of the gun.

Sometime after Mr. Benton took possession of the firearm, an FBI analyst discovered Mr. Benton had a prior domestic violence conviction. After verifying the FBI agent's determination, Special Agent Tim Holland, an agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, called Mr. Benton and "advised him, hey, because of your domestic violence conviction in New Mexico, you can't have this firearm." ROA, Vol. 3 at 53. Agent Holland also "advised [Mr. Benton] . . . he could return [the firearm] where he bought it or to any other licensed dealer and get his money back." *Id.* Mr. Benton responded, stating, "he could possess the firearm and that he wasn't prohibited." *Id.*; *see also id.* at 72 (Agent Holland's testimony that Mr. Benton "just flat-out said he could have the gun").

Agent Holland then obtained a warrant to seize the gun, which he executed in June of 2018. Mr. Benton does not dispute on appeal that, at the time he possessed the firearm, he knew he had been convicted of a misdemeanor crime of domestic violence. Nor does he dispute that he knowingly possessed the firearm. *See* Oral Arg. at 12:24–43 (asked whether Mr. Benton challenged his knowledge that he possessed the firearm or his knowledge that he possessed the status described in § 922(g), his counsel responded

3

"no"). Mr. Benton does assert he was unaware his domestic violence conviction made it illegal for him to possess a firearm. He claims he is innocent because of this lack of knowledge.

### B. *Procedural History*

**1. New Mexico Misdemeanor Domestic Violence Conviction**

In April 2007, Mr. Benton was charged with one count of "Battery Against a Household Member," under New Mexico Statute § 30-3-15, for "committ[ing] domestic abuse" against his wife. Supp. ROA at 12–13, Ex. 4. He pleaded guilty in June 2007.

**2. Federal Proceedings**

In December 2018, a grand jury issued an indictment charging Mr. Benton with one count of possession of a firearm by a person convicted of a misdemeanor crime of domestic violence, in violation of 18 U.S.C. § 922(g)(9), the penalty for which is found in 18 U.S.C. § 924(a)(2). In March 2019, Mr. Benton pleaded guilty to the indictment without a plea agreement.

At the time Mr. Benton pleaded guilty, the law of this circuit applied the mens rea requirement of knowledge only to the defendant's possession of a firearm. *See, e.g.*, *United States v. Games-Perez*, 667 F.3d 1136, 1140 (10th Cir. 2012) ("Our circuit has expressly held that the only knowledge required for a § 922(g) conviction is knowledge that the instrument possessed is a firearm." (internal quotation marks omitted)). Prior to Mr. Benton's sentencing, the Supreme Court decided *Rehaif*, in which it held that "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the

4

relevant category of persons barred from possessing a firearm." 139 S. Ct. at 2200.

Mr. Benton filed a motion to withdraw his guilty plea in light of *Rehaif*, which the district court granted.

The grand jury then issued a two-count superseding indictment, followed by a second superseding indictment. As relevant here, the indictment again charged Mr. Benton with possession of a firearm by a person convicted of a misdemeanor crime of domestic violence, under 18 U.S.C. §§ 922(g)(9) and 924(a)(2).[2] The case proceeded toward trial.

The government moved in limine to prohibit Mr. Benton from arguing to the jury that he did not know his misdemeanor domestic violence conviction made it unlawful for him to possess the firearm. Mr. Benton objected, arguing that granting the government's motion "would deprive him of the essence of the defense which *Rehaif* states it provides." ROA, Vol. 1 at 135. The district court granted the government's motion, reasoning "*Rehaif* requires that the defendant have knowledge of his status. *Rehaif* does not hold that the [g]overnment must further prove, based on the defendant's status, that the defendant knew he was prohibited from possessing a firearm." *Id.* at 136. The district court "ma[de] clear that in granting the [g]overnment's Motion, [Mr. Benton] [wa]s not prohibited from arguing that he did not have knowledge of his status"—that is, he was not prohibited from arguing to the jury that he did not know he was a domestic violence

_____

[2] The second count of the second superseding indictment was for making a false statement during the purchase of a firearm, in violation of 18 U.S.C. § 922(a)(6). Mr. Benton was acquitted on this count, and it is not at issue in this appeal.

5

misdemeanant. *Id.* at 136–37. Mr. Benton was solely "prohibited from arguing he did not know that his status made it unlawful for him to possess a firearm." *Id.* at 137.

Mr. Benton thereafter submitted proposed jury instructions. He requested that the district court instruct the jury that the elements of a conviction under 18 U.S.C. § 922(g)(9) include that he "knew that his status made him a prohibited person from possessing a firearm." ROA, Vol. 1 at 120. He cited *Rehaif* as the authority for the requested instruction. *Id.* The district court denied Mr. Benton's request, explaining that its "motion in limine ruling had rejected that interpretation of the recent Supreme Court case in *Rehaif.*" ROA, Vol. 3 at 98. The district court instructed the jury that to find Mr. Benton guilty, it must find, among other things, that the government proved beyond a reasonable doubt that "at the time [Mr. Benton] possessed the firearm, [he] knew he had been convicted of a misdemeanor crime of domestic violence." ROA, Vol. 1 at 160. But the court did not instruct the jury that it must further find the government proved Mr. Benton knew he was prohibited from possessing a firearm as a result of his domestic violence conviction.

After a two-day trial, the jury convicted Mr. Benton. The district court entered judgment and sentenced Mr. Benton to 6 months of home detention and 5 years of probation. Mr. Benton timely appealed.

## II.     DISCUSSION

Mr. Benton was convicted of possessing a firearm after having been convicted of a misdemeanor crime of domestic violence, under 18 U.S.C. §§ 922(g)(9) and 924(a)(2). Section 922(g) makes it unlawful for certain individuals to "possess in or affecting

6

commerce, any firearm or ammunition." The provision lists nine categories of individuals subject to the prohibition, the ninth of which is "any person . . . who has been convicted in any court of a misdemeanor crime of domestic violence." 18 U.S.C. § 922(g)(9). A separate provision, § 924(a)(2), adds that anyone who "knowingly violates" § 922(g) shall be fined or imprisoned for up to 10 years.

When Mr. Benton pleaded guilty to violating 18 U.S.C. § 922(g)(9) in March of 2019, the Courts of Appeals had unanimously applied the mens rea requirement of knowledge to only one element under 18 U.S.C. § 922(g)—possession of a firearm. *See, e.g.*, *Games-Perez*, 667 F.3d at 1140 ("[The Tenth C]ircuit has expressly held that the only knowledge required for a § 922(g) conviction is knowledge that the instrument possessed is a firearm." (internal quotation marks omitted)); *United States v. Williams*, 946 F.3d 968, 970 (7th Cir. 2020) (observing that before *Rehaif*, "[t]he Courts of Appeals had unanimously concluded that 18 U.S.C. § 922(g) . . . required the government to prove a defendant knowingly possessed a firearm or ammunition, but not that he knew he belonged to one of the prohibited classes"). The Supreme Court in *Rehaif* disagreed, holding that "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct. at 2200. That is, *Rehaif* held the mens rea requirement of knowledge applies not just to the defendant's knowledge that he possesses a firearm, but to the defendant's knowledge that he holds a status identified by § 922(g), as well.

7

Mr. Benton and the government dispute the scope of the Court's holding. They agree that after *Rehaif*, to secure a conviction under §§ 922(g) and 924(a)(2), the government must prove the defendant knew he possessed the status relevant under § 922(g), and knew he possessed a firearm. As applied in this case, the government was required to prove Mr. Benton knew he was a domestic violence misdemeanant and that he knew he possessed a firearm. Mr. Benton concedes on appeal that the government has satisfied these requirements. But Mr. Benton argues *Rehaif* imposed an additional burden on the government—specifically, to prove Mr. Benton knew he was prohibited from possessing a firearm as a result of his status. The government and district court disagreed, construing *Rehaif* as imposing no such additional requirement.[3]

---

[3] At oral argument, Mr. Benton asserted he was not necessarily arguing that *Rehaif* imposed, as an additional requirement or element of a § 922(g) conviction, that the government must prove the defendant knew his status prohibited him from possessing a firearm. *See* Oral Arg. at 12:22–15:29. Rather, Mr. Benton suggested that *Rehaif* and the Court of Appeals cases cited in his briefing "carve out . . . the potential to present a defense of plausible ignorance" based on a defendant's lack of knowledge that his firearm possession was unlawful. *Id.* at 12:44–13:06. Mr. Benton did not make this argument in his briefing, instead repeatedly presenting the issue on appeal as whether *Rehaif* imposed an additional element. *See, e.g.*, Aplt. Br. at 2 (presenting the issue on appeal as whether *Rehaif* "mandate[s] that the government prove that a defendant know that a prior, predicate conviction precluded him from possessing a firearm"); *id.* at 26–27 (arguing the district court "did not instruct the jury that an *element* of the crime was that [Mr. Benton] knew that his [domestic violence] conviction made him a prohibited person" and that the district court's jury instruction therefore "violates or does not meet *Rehaif*'s knowledge requirement" (emphasis added)).

This court will not consider arguments asserted for the first time at oral argument. *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 762 F.3d 1114, 1122 n.7 (10th Cir. 2014). In any event, Mr. Benton's argument lacks merit. As discussed *infra*, Mr. Benton's reading of *Rehaif* and the several Court of Appeals cases he cites is mistaken. These cases do not permit a defendant to present an affirmative defense based on his ignorance of the law prohibiting him from possessing a firearm. Instead, these

We agree with the government and the district court, and we reject Mr. Benton's interpretation of *Rehaif*. In part B, we explain the reasons for our conclusion that *Rehaif* does not support Mr. Benton's position. Because we reject Mr. Benton's interpretation of *Rehaif*, we also reject, in Part C, his derivative challenges to the jury instructions and to the sufficiency of the evidence.

### A. *Standards of Review*

This court "review[s] the jury instructions de novo and view[s] them in the context of the entire trial to determine if they accurately state the governing law and provide the jury with an accurate understanding of the relevant legal standards and factual issues in the case." *United States v. Christy*, 916 F.3d 814, 854 (10th Cir. 2019) (quotation marks omitted). We review a sufficiency of the evidence claim "de novo, asking only whether taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *United States v. Nance*, 767 F.3d 1037, 1043 (10th Cir. 2014) (quotation marks omitted).

### B. *Proper Interpretation of* **Rehaif**

We reject Mr. Benton's proposed interpretation of *Rehaif* for several reasons. First, and most significantly, the Supreme Court's holding and reasoning in *Rehaif* is not consistent with the additional requirement Mr. Benton suggests, and Mr. Benton's

cases merely instruct, consistent with our holding today, that a defendant's lack of knowledge that he possesses the relevant status under § 922(g) precludes his conviction.

9

arguments to the contrary are unpersuasive. Second, every Court of Appeals to consider the interpretation proposed by Mr. Benton has rejected it. Finally, the decisions relied on by Mr. Benton in support of his position are, in fact, consistent with the interpretation of *Rehaif* we adopt here. We elucidate each of these reasons in turn.

**1. Supreme Court's Reasoning and Holding in *Rehaif***

a. *Legal Background*

In *Rehaif,* the government prosecuted the defendant under 18 U.S.C. §§ 922(g)(5) and 924(a)(2) for possessing a firearm while being an alien unlawfully present in the United States. *See* 139 S. Ct. at 2194. The issue before the Court was "the scope of the word 'knowingly,'" found in § 924(a)(2), and specifically whether, to convict a defendant under §§ 922(g) and 924(a)(2), the government must prove not only "that the defendant knew he possessed a firearm," but "also that he knew he had the relevant status when he possessed it." *Id.* That is, the Court considered whether the government had to prove the defendant knew he was unlawfully present in the United States when he possessed the firearm. The Court answered this question in the affirmative.

In reaching its holding, the Court explained that "[w]hether a criminal statute requires the Government to prove that the defendant acted knowingly is a question of congressional intent," and here, Congress specified the scienter requirement in the statute itself. *Id.* at 2195. Specifically, the text of § 924(a)(2) provides: "Whoever knowingly violates subsection . . . (g) . . . of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both." 18 U.S.C. § 924(a)(2). The Court further explained:

> The term "knowingly" in § 924(a)(2) modifies the verb "violates" and its direct object, which in this case is § 922(g). The proper interpretation of the statute thus turns on what it means for a defendant to know that he has "violate[d]" § 922(g). . . . [Section] 922(g) makes possession of a firearm or ammunition unlawful when the following elements are satisfied: (1) a status element (in this case, "being an alien . . . illegally or unlawfully in the United States"); (2) a possession element (to "possess"); (3) a jurisdictional element ("in or affecting commerce"); and (4) a firearm element (a "firearm or ammunition").

*Id.* at 2195–96. The Court stated that "[a]s 'a matter of ordinary English grammar,' we normally read the statutory term '"knowingly" as applying to all the subsequently listed elements of the crime.'" *Id.* at 2196 (quoting *Flores-Figueroa v. United States*, 556 U.S. 646, 650 (2009)). Neither party argued the word "knowingly" modifies § 922(g)'s jurisdictional element, but the Court agreed with Mr. Rehaif that, "by specifying that a defendant may be convicted only if he 'knowingly violates' § 922(g), Congress intended to require the Government to establish that the defendant knew he violated the material elements of § 922(g)," including the status element. *Id.*

In addition to the statutory text, the Court discussed the "basic principle that underlies the criminal law, namely, the importance of showing . . . 'a vicious will.'" *Id.* (quoting 4 W. Blackstone, COMMENTARIES ON THE LAWS OF ENGLAND 21 (1769)). The Court acknowledged "scienter's importance in separating wrongful from innocent acts," *id.*, and explained that "[a]pplying the word 'knowingly' to the defendant's status in § 922(g) helps advance th[is] purpose of scienter," *id.* at 2197. "Without knowledge of [his] status," the Court went on, "the defendant may well lack the intent needed to make his behavior wrongful." *Id.*

11

Finally, the Court explained why it rejected each of the government's arguments against applying a knowledge requirement to § 922(g)'s status element. *Id.* at 2197–99. Relevant here, the Court was unpersuaded by the government's assertion that requiring the defendant to know his status as an alien "illegally or unlawfully in the United States" would contravene the "well-known maxim that 'ignorance of the law' (or a 'mistake of law') is no excuse." *Id.* at 2198 (quoting *Cheek v. United States*, 498 U.S. 192, 199 (1991)). The Court explained "[t]his maxim . . . normally applies where a defendant has the requisite mental state in respect to the elements of the crime but claims to be 'unaware of the existence of a statute proscribing his conduct.'" *Id.* (quoting 1 W. LaFave & A. Scott, SUBSTANTIVE CRIMINAL LAW § 5.1(a), p. 575 (1986)). Mr. Rehaif did not claim ignorance of the existence of a statute proscribing his conduct; rather, he asserted he lacked the requisite knowledge of his status of being unlawfully in the United States, a material element of § 922(g)(5). Under these circumstances, the Court concluded the ignorance-of-the-law maxim did not apply. *See id.*

Ultimately, the Court in *Rehaif* held that "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Id.* at 2200. The Court accordingly reversed the judgment of the Court of Appeals, which had affirmed jury instructions omitting the knowledge-of-status requirement. *Id.* at 2195, 2200.

b. *Application*

Mr. Benton's proposed interpretation of *Rehaif* is not supported by the decision's holding. Insofar as Mr. Benton argues for an extension of *Rehaif*, his position is foreclosed by the Court's reasoning.

Nowhere in *Rehaif* does the Court hold that in a prosecution under 18 U.S.C. §§ 922(g) and 924(a)(2), the government must prove the defendant knew his status prohibited him from possessing a firearm. Rather, the Court held the scienter requirement found in § 924(a)(2) "require[s] the Government to establish that the defendant knew he violated the *material elements* of § 922(g)." *Rehaif*, 139 S. Ct. at 2196 (emphasis added). Those material elements are (1) possession of a firearm (or ammunition) and (2) "a status element." *Id.* at 2195–96. In *Rehaif*, the "status element" was "being an alien . . . illegally or unlawfully in the United States," as found in § 922(g)(5). *Id.* In Mr. Benton's case, the status element is a "person . . . who has been convicted in any court of a misdemeanor crime of domestic violence." 18 U.S.C. § 922(g)(9). Mr. Benton does not dispute on appeal that the government proved his knowledge of both material elements. *See* Oral Arg. at 12:24–43 (confirmation from Mr. Benton's counsel that Mr. Benton does not challenge his knowledge of his firearm possession or his knowledge of his status as a person convicted of a misdemeanor crime of domestic violence).[4]

---

[4] We note that one question *Rehaif* left open was "what precisely the Government must prove to establish a defendant's knowledge of [his] status in respect to [the] § 922(g) provisions not at issue" in *Rehaif*, such as § 922(g)(9). 139 S. Ct. at 2200. Because Mr. Benton concedes his knowledge of his status under § 922(g)(9), we do not address that open question in this appeal.

13

Mr. Benton's contrary interpretation of *Rehaif* is unworkable. For one thing, it would improperly elevate the mens rea required for conviction under §§ 922(g) and 924(a)(2) from knowledge to willfulness. As the Supreme Court has explained, "the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense[,]" rather than "knowledge of the law." *Bryan v. United States*, 524 U.S. 192, 193 (1998). The term "willfully," in contrast, requires proof the defendant "acted with knowledge that his conduct was unlawful." *Id.* The mental state sufficient for commission of a federal criminal offense is a question of congressional intent, and here, as the *Rehaif* Court noted, Congress explicitly prescribed the requisite mental state—knowledge. *See* 139 S. Ct. at 2195–96; *see also* 18 U.S.C. § 924(a)(2). Accordingly, construing the statute in the manner Mr. Benton requests would contravene congressional intent by requiring a willful mens rea where Congress specified only a knowing mens rea is sufficient.

Mr. Benton also contends that because he did not know he was prohibited from possessing a firearm, he "had an 'innocent state of mind,' . . . lacked the 'culpable mental state,' [and] did not have the 'vicious will' *Rehaif* requires be proven to be convicted under Section 922(g)." Aplt. Br. at 19 (quoting *Rehaif*, 139 S. Ct. at 2196). But the *Rehaif* Court did not hold the government must show the defendant knew his conduct was prohibited in order to "show[] . . . 'a vicious will,'" in the Blackstonian sense of the term. 139 S. Ct. at 2196 (quoting 4 W. Blackstone, *supra*). Rather, the defendant's "knowledge of [his] *status*" is what helps ensure, in the context of a prosecution under §§ 922(g) and 924(a)(2), that the defendant has the "intent needed to make his behavior wrongful." *Id.* at 2197 (emphasis added).

14

Finally, Mr. Benton asserts, "*Rehaif* recognizes that, under the facts of this case, the maxim, 'ignorance of the law is no excuse,' may or should not apply." Aplt. Br. at 24. Mr. Benton misapprehends the *Rehaif* decision. The Court did not hold that in prosecutions under §§ 922(g) and 924(a)(2), the ignorance-of-the-law maxim should be disregarded. Rather, the Court explained that its holding—that is, application of the knowledge requirement of § 924(a)(2) to the defendant's status under § 922(g)—does not run counter to the maxim. The interpretation urged by Mr. Benton, however, would. The maxim "normally applies where a defendant has the requisite mental state in respect to the elements of the crime but claims to be 'unaware of the existence of a statute proscribing his conduct.'" *Rehaif*, 139 S. Ct. at 2198 (quoting 1 W. LaFave & A. Scott, p. 575). Here, Mr. Benton does not dispute he had the requisite mental state in respect to the elements of the crime—that is, he does not dispute that he knowingly possessed a firearm and that he knew at the time of his possession he was a person convicted of a misdemeanor crime of domestic violence. He merely claims he did not know his conduct was prohibited by law. Mr. Benton's position therefore flies in the face of the maxim because he claims his ignorance of the law is a defense to prosecution under §§ 922(g) and 924(a)(2). But, contrary to Mr. Benton's assertion, nothing in *Rehaif* altered the long-standing principle that ignorance of the law is no defense.

In sum, the *Rehaif* decision supports the interpretation of §§ 922(g)(9) and 924(a)(2) urged by the government and accepted by the district court, and does not permit Mr. Benton's contrary interpretation.

15

**2. Decisions of Our Sibling Circuits Addressing the Issue Presented**

Although we reach our conclusion independently, we find support for our position in other jurisdictions. Indeed, every other Court of Appeals to have considered the question has rejected the interpretation of *Rehaif* Mr. Benton advances here.

The Sixth Circuit was the first to address this issue. In *United States v. Bowens*, 938 F.3d 790, 792 (6th Cir. 2019), the defendants were convicted under 18 U.S.C. § 922(g)(3), which has as its status element that the defendant is an unlawful user of a controlled substance. The defendants challenged their convictions on multiple grounds, including that "*Rehaif* requires . . . that the Government prove each defendant 'knew he was prohibited from possession [of a firearm] because he was an unlawful user of a controlled substance.'" *Id.* at 797 (alteration in original). The Sixth Circuit stated that the "defendants' reading of *Rehaif* goes too far because it runs headlong into the venerable maxim that ignorance of the law is no excuse." *Id.* Further, the "[d]efendants' interpretation does not follow from the text of *Rehaif*." *Id.* The Sixth Circuit thus held that after *Rehaif*, as applied to a prosecution under § 922(g)(3), "the Government arguably must prove that defendants knew they were unlawful users of a controlled substance, but not, as defendants appear to argue, that they knew unlawful users of controlled substances were prohibited from possessing firearms under federal law." *Id.* Applying this reasoning to § 922(g)(9), the government must prove the defendant knew he was a domestic violence misdemeanant, but not that he knew domestic violence misdemeanants are prohibited from possessing firearms under federal law.

16

The Seventh Circuit was the next circuit to consider this issue, in *United States v. Maez*, 960 F.3d 949 (7th Cir. 2020), and it reasoned and concluded similarly. Like Mr. Benton, the defendants in *Maez* argued that § 922(g), as interpreted in *Rehaif*, requires the government to prove the defendants "kn[e]w that it was a crime to possess a firearm as a result of their prohibited status." *Id.* at 954. The Seventh Circuit rejected this interpretation, reasoning that *Rehaif* could not be read as imposing what amounted to a willfulness requirement because: (1) the Supreme Court would not have adopted such a significant requirement "without saying so with unmistakable clarity"; (2) "the logic of the Court's opinion supports only the narrower requirement of knowledge of status," given its "textual analysis centered on Congress's use of the word 'knowingly' in § 924(a)(2)"; (3) the opinion's discussion of the ignorance-of-the-law maxim "makes doubly clear that § 922(g) requires knowledge only of status, not knowledge of the § 922(g) prohibition itself"; and (4) the dissenting Justices in *Rehaif* read the majority's opinion as adopting the narrower requirement, and the majority opinion did not object to this description of its holding. *Id.* at 954–55 & n.3.

Next, in *United States v. Singh*, the Ninth Circuit rejected an analogous interpretation advanced by the defendant, explaining:

> The Court did not hold that the Government must also prove the defendant knew his or her status prohibited firearm ownership or possession. Such an interpretation goes against the plain language of the statute and the Supreme Court's textual analysis of 'knowingly' in § 924(a)(2). Instead, [the defendant's] interpretation would improperly raise the scienter requirement of § 924(a)(2) from "knowingly" to "willfully."

17

979 F.3d 697, 727 (9th Cir. 2020). The court accordingly held that "[b]ased on the plain language of § 924(a)(2) and the Supreme Court's decision in *Rehaif*, the Government must prove only that [the defendant] knew, at the time he possessed the firearm, that he belonged to one of the prohibited status groups enumerated in § 922(g)." *Id.* at 727–28.

Penultimately, in *United States v. Johnson*, the defendant challenged his conviction under § 922(g)(9), arguing that "he did not 'know he was prohibited from federal possession of a firearm.'" 981 F.3d 1171, 1189 (11th Cir. 2020). The Eleventh Circuit rejected this argument as irrelevant, explaining that "under *Rehaif's* knowledge-of-status requirement, that a defendant does not recognize that he personally is prohibited from possessing a firearm under federal law is no defense if he knows he has a particular status and that status happens to be one prohibited by § 922(g) from possessing a firearm." *Id.* (citing *Maez*, 960 F.3d at 954–55).

Most recently, the Eighth Circuit addressed the proper interpretation of *Rehaif* in *United States v. Robinson*, 982 F.3d 1181 (8th Cir. 2020). There, the defendant does not appear to have argued explicitly on appeal that his lack of knowledge that he was prohibited from possessing a firearm should have precluded his conviction. Nevertheless, in affirming Mr. Robinson's conviction, the Eighth Circuit noted that he had "claimed ignorance of applicable law" before the district court, "repeatedly explain[ing] that he thought he was allowed to possess a firearm." *Id.* at 1187. The Eighth Circuit rejected this argument; citing *Maez* and *Singh*, the court stated that "*Rehaif* did not alter the 'well-known maxim that "ignorance of the law" . . . is no excuse.'" *Id.* (quoting *Rehaif*, 139

18

S. Ct. at 2198). The Eighth Circuit's interpretation of *Rehaif* is therefore in accord with that of the Sixth, Seventh, Ninth, and Eleventh Circuits.

The unanimity of our sibling circuits on this issue supports our own conclusion here, and Mr. Benton proffers no compelling basis for this court to depart from their reasoning and conclusions. *See Exby-Stolley v. Bd. of Cnty. Comm'rs*, 979 F.3d 784, 810 (10th Cir. 2020) (en banc) ("[W]e are reluctant to effectively create a circuit split . . . , especially where so many circuits would be lined up against us."); *see also United States v. Thomas*, 939 F.3d 1121, 1131 (10th Cir. 2019) ( "[T]he greater the number of circuits that are aligned together, the more an appropriate judicial modesty should make us reluctant to reject that uniform judgment.").

### 3. Other Cases Cited by Mr. Benton

Mr. Benton points to one recent decision from this circuit and four decisions of other circuits that he contends support his proposed interpretation of *Rehaif*. But he misconstrues each of these cases.

In *United States v. Trujillo*, 960 F.3d 1196 (10th Cir. 2020), this court considered an appeal from a defendant's conviction under § 922(g)(1) for being a felon in possession of a firearm. *Id.* at 1200. After Mr. Trujillo pleaded guilty, the Supreme Court decided *Rehaif*, and Mr. Trujillo argued on appeal that his plea was constitutionally invalid because the district court had not informed him of the knowledge-of-status element announced in *Rehaif*. *Id.* at 1201. We agreed with Mr. Trujillo that the district court's failure to inform him of this element constituted an error that was plain. *Id.* But we held it

did not mandate reversal of Mr. Trujillo's conviction because there was "an abundance of evidence that tends to show [Mr. Trujillo] knew of his relevant status." *Id.* at 1207.

Mr. Trujillo did not advance the interpretation of *Rehaif* that Mr. Benton offers here. Nonetheless, Mr. Benton claims dicta in *Trujillo* supports his argument. According to Mr. Benton, where "the evidence of a defendant's knowledge of his . . . status is weak," *Trujillo*, 960 F.3d at 1207, *Trujillo* indicates "a defendant might 'credibly allege,' and should be allowed to prove to the jury[,] that he did not know his status prohibited him from possessing a gun." Aplt. Br. at 15 n.8 (quoting *Trujillo*, 960 F.3d at 1207). But, contrary to Mr. Benton's assertion, no language in *Trujillo* suggests a defendant should be "allowed to prove to the jury that he did not know his status *prohibited him from possessing a gun*." *Id.* (emphasis added). *Trujillo* instead held simply that, post-*Rehaif*, lack of knowledge of one's *status* under § 922(g) negates an element of the offense. Indeed, consistent with our holding today, in *Trujillo* we characterized *Rehaif*'s holding as follows: "*Rehaif* changed the established law such that, now, to secure a conviction under 18 U.S.C § 922(g)(1), the Government must also prove that the defendant knew 'he had the *relevant status*' as a felon when he possessed the firearm." *Id.* at 1201 (emphasis added) (quoting *Rehaif*, 139 S. Ct. at 2194). We did not suggest *Rehaif* also requires the government to prove the defendant knew his status under § 922(g) made it illegal for him to possess a firearm.[5]

---

[5] Our decision today is also in accord with dicta from two other recent decisions from this court construing *Rehaif. See United States v. Tignor*, 981 F.3d 826 (10th Cir. 2020); *United States v. Sanchez*, 983 F.3d 1151 (10th Cir. 2020). Like *Trujillo*, neither decision directly confronts the interpretation of *Rehaif* Mr. Benton advances here. Yet,

Mr. Benton similarly misinterprets the four decisions he cites from other Courts of Appeals. *See* Aplt. Br. at 15–18 (citing and discussing *United States v. Davies*, 942 F.3d 871 (8th Cir. 2019); *United States v. Williams*, 946 F.3d 968 (7th Cir. 2020); *United States v. Jawher*, 950 F.3d 576 (8th Cir. 2020); and *United States v. Balde*, 943 F.3d 73 (2d Cir. 2019)). He asserts:

> *Rehaif* and these Circuit Court cases conclude that if a defendant has a reasonable, a "plausible," belief that his status, condition or past does not prohibit him from having a gun, then he may lack the knowledge or the scienter necessary to be found guilty under 18 U.S.C. § 922(g). These cases insist that if a defendant does not have the requisite knowledge or belief that his status renders him legally prohibited from possessing a gun, then he cannot be found guilty.

Aplt. Br. at 18.

Mr. Benton merges the two distinct concepts of (1) the defendant's knowledge of his status under § 922(g) with (2) the defendant's knowledge that his status made it illegal for him to possess a firearm. This conflation, however, finds no support in the cases themselves. Rather, each of the four circuits held that, in light of *Rehaif*, the government must prove the defendant had knowledge of his status under § 922(g); none

---

each interprets *Rehaif* as applying § 924(a)(2)'s scienter requirement to § 922(g)'s status element, and neither holds or even hints that the government must also prove the defendant knew he was prohibited from possessing a firearm as a result of his status. *See Tignor*, 981 F.3d at 827 (stating that "[g]iven the holding in *Rehaif*, the government needed to prove that Mr. Tignor had known that his prior conviction was punishable by more than a year in prison," in order to secure a conviction under 18 U.S.C. § 922(g)(1)); *Sanchez*, 983 F.3d at 1164, 1165 (noting that "[p]rior to pleading guilty, Mr. Sanchez was not informed that an element of being a felon in possession is a defendant's knowledge of his felon status at the time of his firearm possession," but holding that his challenge to his guilty plea failed on the third prong of plain-error review because "[t]he record [wa]s replete with evidence that Mr. Sanchez knew he was a felon at the time of the incident").

21

held that the defendant must also know his status prohibited him from possessing a firearm. *See Davies*, 942 F.3d at 874 (stating that "[u]nder *Rehaif*, [Mr. Davies] needed to know *only* that he had been convicted of a crime punishable by imprisonment for a term exceeding one year at the time he possessed the firearms"—the prohibited status found in § 922(g)(1)—and vacating his conviction in part because "there is no evidence that [Mr. Davies] knew when he possessed the firearms . . . that he had been convicted" of such crimes (emphasis added)); *Jawher*, 950 F.3d at 580 (vacating Mr. Jawher's conviction because he had reasonable grounds on which to contest his knowledge that he was unlawfully in the United States—the prohibited status found in § 922(g)(5)(A)— including the fact that he had been in the United States for over a decade, had entered legally, had a work permit, and had been married for many years to a U.S. citizen); *Balde*, 943 F.3d at 97–98 & n.7 (vacating Mr. Balde's conviction under § 922(g)(5)(A) in part because the government had no "direct proof that [Mr.] Balde knew that he was illegally present" in the United States, and Mr. Balde had presented evidence suggesting otherwise); *Williams*, 946 F.3d at 973–74 (affirming Mr. Williams's conviction because he could not plausibly dispute his knowledge of his relevant status under § 922(g)(1)— i.e., that he had "been convicted of a crime punishable by a term of imprisonment exceeding one year"—where he had served twelve years in prison for first-degree murder prior to possessing the firearm).

Thus, each decision Mr. Benton cites is consistent with our holding today and with the other Court of Appeals decisions discussed in this opinion. And none supports his position in this appeal.

We reject Mr. Benton's proposed interpretation of *Rehaif* and join our sibling circuits in holding that, in a prosecution under 18 U.S.C. §§ 922(g) and 924(a)(2), the government need not prove that a defendant knew he was prohibited from possessing a firearm as a result of his status under § 922(g). Rather, § 924(a)(2)'s scienter requirement extends only to the defendant's knowledge that he (1) possessed a firearm (or ammunition) and (2) had the relevant status under § 922(g) at the time of his possession. Here, Mr. Benton concedes his knowledge of both.

### C. *Jury Instructions and Sufficiency of the Evidence*

Mr. Benton's jury-instructions and sufficiency-of-the-evidence arguments depend for their success upon this court's acceptance of his interpretation of *Rehaif*. Specifically, Mr. Benton argues that the district court erred in instructing the jury because its instructions "eliminate[d] the *Rehaif* element that a [defendant] know, that he understand that his status prevents him from possessing a firearm." Aplt. Br. at 28. Similarly, he argues the government failed to present sufficient evidence that he knew he was prohibited from possessing a firearm. Because we reject Mr. Benton's interpretation of *Rehaif* as imposing this additional element, we likewise reject these derivative challenges.[6]

---

[6] In the argument section of his opening brief, Mr. Benton also asserts that the district court's in limine ruling contravened *Rehaif*, constituting "an error of law that itself requires reversal of [his] conviction." Aplt. Br. at 19. We need not separately analyze this argument, however, for like Mr. Benton's challenges to the jury instructions and sufficiency of the evidence, it is entirely predicated on accepting his interpretation of *Rehaif*. *See id.* at 28 (arguing the district court's "in limine order[] served to eliminate the

## III.    CONCLUSION

We AFFIRM Mr. Benton's conviction.

---

*Rehaif* element that a person know . . . that his status prevents him from possessing a firearm"). Because we reject Mr. Benton's *Rehaif* interpretation, his in limine argument fails, as well.