NOT DESIGNATED FOR PUBLICATION

No. 123,814

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JERMAINE T. WILEY JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed May 6, 2022. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., GREEN, J., and RICHARD B. WALKER, S.J.

PER CURIAM: After a car stop, police found a gun in Jermaine T. Wiley Jr.'s car. Wiley confirmed that the gun was his, and he also confirmed that he was the subject of an active protection from abuse (PFA) order. Wiley claimed not to know that the PFA order prohibited him from possessing a firearm. The State charged Wiley with criminal use of weapons under K.S.A. 2019 Supp. 21-6301(a)(17). At trial, the State presented evidence that Wiley knowingly possessed the gun and was aware of the PFA order, and it admitted the order into evidence. The jury convicted Wiley as charged. In Wiley's appeal from his conviction and sentence, we find no error in the district court and therefore affirm.

1

In August 2019, Wichita police officers stopped a car because its license plate was registered to a different vehicle. Wiley was the driver and only person in the car. After running Wiley's name through a law enforcement database, officers learned that he had an outstanding warrant for his arrest. The officers placed Wiley into custody in the back of their patrol car and began questioning him.

When one of the officers asked Wiley if there was anything they needed to be worried about in the car, Wiley explained that there was a handgun under the driver's seat. After an officer looked under the driver's seat, he removed a loaded semiautomatic handgun which he found. There were also two magazines for the gun in the backseat. Wiley told officers that the gun was his and that he had purchased it about two years earlier. A later test of the gun showed that it was operational.

While Wiley was in the back of the patrol car, he also told the officers that he had a protection from abuse (PFA) order against him. One of the officers confirmed the order's existence by calling the sheriff's records department, which confirmed that Wiley was the subject of a PFA order and that the order was currently in effect. The officers informed Wiley that he was not allowed to possess a gun while subject to a PFA order, and Wiley seemed surprised when he learned about this restriction.

The State charged Wiley with criminal use of a weapon and unlawfully possessing a license plate that was not issued to him. The State later dropped the license-plate charge, and the charge for criminal use of a weapon proceeded to a jury trial.

At trial, the jury heard testimony from the two arresting officers who described pulling Wiley over, finding the gun, and discovering the existence of the PFA order. The jury also heard testimony that Wiley's gun was fully functional. Finally, the jury reviewed

a copy of the PFA order against Wiley, which the parties had redacted to eliminate prejudicial information and some personal identifiers. The State admitted an unredacted copy of the PFA order into evidence for appeal purposes, but the jury did not see or consider this version of the order.

During the defense's opening and closing arguments, the district court sustained the State's objections when Wiley's attorney tried to argue that the State had to prove, as an element of the crime charged, that Wiley had notice of the PFA order and also prove he knew that the order prohibited him from having a gun. The district court determined that Wiley's argument misstated the law—that is, the State only had to prove that Wiley received notice of the PFA hearing, not the final order issued after the hearing. After hearing the evidence, the jury convicted Wiley as charged.

Wiley filed an untimely motion for a new trial that the district court denied on its merits. The district court sentenced Wiley to an 8-month underlying sentence but followed the statutory presumption and granted him 18 months' probation supervision.

Wiley has timely appealed from his conviction and sentence.

ANALYSIS

Wiley asserts that insufficient evidence supports his conviction. First, he argues that the State failed to prove an element of the crime charged: that he had an opportunity to participate in the PFA hearing. Second, Wiley asserts that the State had to—and failed to—prove that he knew about the PFA order and that it prohibited firearm possession. Finally, Wiley contends the district court's refusal to allow his attorney to argue a lack of evidence that he was served with the PFA order violated his constitutional right to present a defense. We will consider each of these arguments in turn.

3

1. *Sufficient evidence supports the State's contention that Wiley received actual notice of, and had an opportunity to participate in, the PFA hearing.*

"'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.'" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018). It is only in rare cases when the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed. *State v. Torres*, 308 Kan. 476, 488, 421 P.3d 733 (2018); *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983).

Wiley was convicted under K.S.A. 2019 Supp. 21-6301(a)(17), which states:

> "(a) Criminal use of weapons is knowingly:
> (17) possessing any firearm by a person while such person is subject to a court order that:
> (A) Was issued after a hearing, of which such person received actual notice, and at which such person had an opportunity to participate;
> (B) restrains such person from harassing, stalking or threatening an intimate partner of such person or a child of such person or such intimate partner, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or the child; and
> (C) . . . (ii) by its terms explicitly prohibits the use, attempted use or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury."

The district court instructed the jury on the elements of the crime accordingly, utilizing PIK Crim. 4th 63.010 (2018 Supp.). The only two elements at issue on appeal are the first two:

- The defendant knowingly possessed a firearm while subject to a court order.
- The court order was issued after a hearing for which the defendant received actual notice and had an opportunity to participate.

The instruction also explains that "[a] defendant acts knowingly when the defendant is aware of the nature of his conduct that the State complains about."

Wiley's first claim attacks the second element. He asserts that the State failed to prove that he "had an opportunity to participate" in the PFA hearing preceding the order. He argues that although there is evidence he attended the PFA hearing, there is no evidence he had an opportunity to participate in it.

Kansas courts have not defined what constitutes sufficient evidence of an opportunity to participate under K.S.A. 2020 Supp. 21-6301(a)(17), but cases examining the statute's nearly identical federal counterpart—18 U.S.C. § 922(g)(8) (2018)—provide guidance. Interpreting that statute, one case addressed the same argument that Wiley makes here—that is, that there was insufficient evidence of an opportunity to participate. See *United States v. Kaspereit*, 994 F.3d 1202, 1211-13 (10th Cir. 2021). In *Kaspereit,* the Tenth Circuit Court of Appeals defined "'opportunity to participate'" to mean "the defendant must have been present at a hearing on the protective order either in person or by counsel and have had an opportunity to object to the entry of, or otherwise engage with the court on the merits of, the order." 994 F.3d at 1211. And there was sufficient evidence of this element when the jury heard testimony about defendant Kaspereit being at the hearing and presenting evidence on the merits of the protective order. 994 F.3d at 1213.

Sufficient evidence supports a finding that Wiley had an opportunity to participate in the hearing. Although there was no testimony about the PFA hearing itself or whether Wiley participated in it, the redacted PFA order the district court admitted into evidence reflects that Wiley had an opportunity to participate. In fact, the order explicitly states that "the defendant has been afforded notice and a timely opportunity to be heard as provided by the laws of Kansas." Although implicit in stating that he had an opportunity to participate, the order also notes that Wiley was present in person at the hearing.

Viewing the evidence in a light most favorable to the State, a rational juror could have found that Wiley had an opportunity to participate in the PFA hearing based on the order. Although there was no evidence about whether or how Wiley used this opportunity, the order explicitly found that Wiley was present and afforded an opportunity to be heard. And there is no evidence contradicting the explicit language of the district court's order. Thus, sufficient evidence supports the jury's finding under the second element—that the PFA order issued after a hearing for which Wiley had actual notice and an opportunity to participate.

2. *The State was not required to prove that Wiley knew the PFA order prohibited possession of a firearm.*

Wiley next argues that the evidence cannot support a finding under the crime's first element—that he knowingly possessed a firearm while subject to a PFA order. His argument rests on a broad reading of the knowledge requirement under K.S.A. 2020 Supp. 21-6301(a)(17)—that is, Wiley asserts the State must prove he knew not only that he possessed a gun, but that he knew the order prohibited him from possessing a gun. The State counters that he did not need to know about the existence of the order or its prohibitions—only that he knew he possessed a firearm. To the extent resolving this issue requires statutory

6

interpretation, our review is de novo. *State v. Frierson*, 298 Kan. 1005, 1010, 319 P.3d 515 (2014).

"If the definition of a crime prescribes a culpable mental state that is sufficient for the commission of a crime, without distinguishing among the material elements thereof, such provision shall apply to all the material elements of the crime, unless a contrary purpose plainly appears." K.S.A. 2020 Supp. 21 5202(f). But when a statute provides a culpable mental state for a specific element, "the prescribed culpable mental state shall be required only as to specified element or elements, and a culpable mental state shall not be required as to any other element of the crime unless otherwise provided." K.S.A. 2020 Supp. 21-5202(g).

Under the criminal-use-of-weapons statute, the first element prohibits "knowingly . . . possessing any firearm by a person while such person is subject to a court order." K.S.A. 2020 Supp. 21-6301(a)(17). Thus, the material elements are a possession element—possessing a firearm—and a status element that prohibits such possession—here, being subject to a PFA order. From the statute's language, it is unclear whether the "knowing" culpable mental state applies only to the possession element or to both the possession and status elements.

Kansas courts have not addressed the extent of the knowledge requirement under K.S.A. 2020 Supp. 21-6301(a)(17), but cases examining comparable statutes provide guidance. The State urges the court to follow the reasoning in *State v. Howard*, 51 Kan. App. 2d 28, 41-49, 339 P.3d 809 (2014), *aff'd* 305 Kan. 984, 389 P.3d 1280 (2017), which examined the knowledge requirement of Kansas' statute prohibiting criminal possession of a firearm by a felon. See K.S.A. 2013 Supp. 21-6304(a)(2).

7

The defendant in *Howard* argued that the State had to prove not only that he knowingly possessed a gun, but that he knew of his status that made such possession illegal—being a felon. A panel of our court determined that the State did not have to prove Howard knew of his status as felon, explaining that under Kansas law, "the State only has to prove the defendant . . . knowingly engaged in the *conduct* that constitutes the crime"—that is, possessing a firearm. 51 Kan. App. 2d at 48. Thus, the State did not have to prove that Howard knew of his status as a felon. 51 Kan. App. 2d at 48-49. The court also looked to federal cases interpreting similar statutes to confirm this reading. 51 Kan. App. 2d at 47-48.

Yet *Howard* contains a key difference that distinguishes it from this case. The criminal possession statute at issue in *Howard* did not supply a culpable mental state—the court underwent a thorough analysis to read a "knowing" culpability requirement into the statute. 51 Kan. App. 2d at 44-48. The lack of an explicit culpability term in the statute was important to the court's conclusion, i.e., that when the Legislature supplies a culpability term "'without distinguishing among the material elements,'" then that culpable mental state applies to all elements. 51 Kan. App. 2d at 49 (quoting K.S.A. 2013 Supp. 21-5202[f]). Because the Legislature did not supply a culpable mental state for Howard's crime, the "knowing" requirement the court supplied did not apply to any elements beyond possession. 51 Kan. App. 2d at 49.

But here, the Legislature supplied an explicit culpability term— "knowingly." See K.S.A. 2020 Supp. 21-6301(a). And it arguably supplied that term without distinguishing between the material elements of the crime. The statute provides generally up front that "[c]riminal use of weapons is knowingly . . ." before supplying the elements of elements of the various offenses listed underneath. K.S.A. 2020 Supp. 21-6301(a). Nor does the jury instruction distinguish whether "knowingly" applies to one or both material elements. See

PIK Crim. 4th 63.010 ("the defendant knowingly possessed a firearm while subject to a court order"). This reading would bring it into the purview of K.S.A. 2020 Supp. 21-5202(f), which requires applying "knowingly" to all elements.

Just as in *Howard*, looking to federal cases addressing the same issue under a statute with similar language lends support. Federal courts have recently had to determine the extent of the "knowing" requirement under 18 U.S.C. § 922(g)(8), which is nearly identical to the statute used to convict Wiley. Examining a different subsection, the United States Supreme Court found that "in a prosecution under 18 U.S.C § 922(g) . . . the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Rehaif v. United States*, 588 U.S. ___, 139 S. Ct. 2191, 2200, 204 L. Ed. 2d 594 (2019). Lower courts have interpreted this decision as requiring knowledge when the status element requires the defendant being subject to a protective order—the same status at issue here, with the same language. See *Kaspereit*, 994 F.3d at 1208; *United States v. Benton*, 988 F.3d 1231, 1238 (10th Cir. 2021).

Thus, unlike in *Howard*, the Legislature supplied a knowledge requirement for criminal use of weapons, and it does not distinguish between the material elements to which it applies:  possessing a firearm and being the subject of a court order. So the State must prove not only that Wiley possessed a firearm, but that he knew he was subject to a court order. Federal caselaw interpreting similar language also supports this reading, recognizing that a knowledge requirement applies to both the possession and status elements. And this reading reflects the language of K.S.A. 2020 Supp. 21-6301(a)(17) and how the jury was instructed on the first element of the crime, which was that the State had to show that Wiley "knowingly possessed a firearm while subject to a court order."

The State also cites *State v. Gillon*, 25 Kan. App. 2d 809, 974 P.2d 1115 (1999), to support its narrow reading of "knowingly." The *Gillon* panel analyzed a provision prohibiting "knowingly . . . possessing or carrying a shotgun with a barrel less than 18 inches in length." 25 Kan. App. 2d at 809-10. The court found that "'knowingly'" only modified the possession element, while the barrel-length requirement only modified "'shotgun.'" Thus, the phrases were unconnected, and the knowing requirement did not apply to the barrel length. 25 Kan. App. 2d at 810.

The same analysis does not apply to the provision here, which prohibits "knowingly . . . possessing any firearm by a person while such person is subject to a court order." K.S.A. 2020 Supp. 21-6301(a)(17). Unlike the barrel-length restriction in *Gillon*, the status element here modifies "possessing," not "firearm." Despite the State's suggestions otherwise, the prepositional phrase "by a person" does not demand a different reading. See PIK Crim. 4th 63.010 (omitting "by a person" when listing the element). Thus, there is a direct line from "knowingly" to the possession and status elements. And the statute at issue in *Gillon* prohibited possession based on the specifications of the firearm, not the status of the defendant who possessed it.

As the United States Supreme Court recently recognized, interpreting "'knowingly'" to extend to the status element makes sense when "the defendant's status is the 'crucial element' separating innocent from wrongful conduct." *Rehaif*, 139 S. Ct. at 2197. It was not illegal for Wiley to possess a firearm at any time—only while he qualified for a status enumerated by statute, such as being subject to a PFA order. Thus, it makes sense that he must know about that status before being convicted of a crime for which the status is a material element. And even if there could be different interpretations of the scope of "knowingly" in K.S.A. 2020 Supp. 21-6301(a)(17), "[a]ny reasonable doubt as to the meaning of a criminal

10

statute is decided in favor of the accused." *State v. Coman*, 294 Kan. 84, Syl. ¶ 5, 273 P.3d 701 (2012).

But no matter how we read the knowledge requirement, sufficient evidence supports the jury's findings that Wiley knowingly possessed a firearm while subject to a court order. The parties agree that Wiley knowingly possessed a firearm; Wiley told officers where the gun was in the car, that it was his, and gave details about when and where he bought it.

A rational juror could also find beyond a reasonable doubt that Wiley knew he was subject to a protective order. Both arresting officers testified that Wiley told them that he was subject to a PFA order. Wiley was present at the hearing from which the order issued. And Wiley's attorney admitted to the jury that Wiley has "never shied away from the fact that that he had a PFA against—that he knew he had a PFA against him, he's never shied away from the fact that he had this firearm." Sufficient evidence shows that Wiley knew he possessed a firearm and that he did so while he knew he was subject to a PFA order.

But Wiley urges this court to go even further when it interprets the scope of "knowingly" in K.S.A. 2020 Supp. 21-6301(a)(17). He asserts that the knowledge requirement extends beyond the possession and status elements, requiring that he know that his status as someone subject to a protective order prohibits possessing firearms.

People are presumed to know the law. *State v. Cook*, 286 Kan. 766, 775, 187 P.3d 1283 (2008). And proving a culpable mental state does not require proving "knowledge of the existence or constitutionality of the statute under which the accused is prosecuted, or the scope or meaning of the terms used in that statute." K.S.A. 2020 Supp. 21-5204(a). When Wiley became the subject of a PFA

11

order, he was presumed to know that he could not own a firearm while that order was in effect, whether or not he knew about the statute prohibiting such conduct. The State did not have to prove that Wiley knew what Kansas law presumes he already knew.

That Wiley seems to have been unaware of his firearm prohibition does not justify reading a heightened mental culpability requirement into K.S.A. 2020 Supp. 21-6301(a)(17). Nothing in the statute's language suggests a person must know that his or her status prohibits firearm possession. As discussed above, the statute only requires knowledge of possession and status. Defendants making Wiley's exact argument under similar statutory language have routinely failed. See *Benton*, 988 F.3d at 1237-41; see also *Kaspereit*, 994 F.3d at 1208 (no requirement "that Defendant knew his status prohibited his possession of a firearm, just that he knew of his status"). Reading such a requirement into the statute would effectively implement a "willful" culpability requirement when the Legislature has expressly stated that "knowingly" is sufficient. See *Benton*, 988 F.3d at 1238.

To support his broad reading of the statute, Wiley compares his conviction for criminal use of a weapon to a conviction for driving on a canceled, suspended, or revoked license under K.S.A. 8-262. Wiley points out that a conviction under K.S.A. 8-262 requires proof that the defendant knew his or her license was canceled, suspended, or revoked. See PIK Crim. 4th 66.120 (2018 Supp.) He asserts that this knowledge requirement supports a requirement that the State prove he knew that being the subject of a PFA order prohibited firearm possession.

Wiley's comparison is unconvincing. A conviction under K.S.A. 2020 Supp. 8-262 requires proof of knowledge of a person's *status*. It does not require proof that they know their status prohibits driving. This is no different than Wiley's situation. The evidence showed that he knew his status—that he was the

subject of a PFA order—but the State never had to show that he knew this status prohibited firearm possession.

Finally, Wiley asserts the evidence is insufficient because there was no evidence that he was ever served with a copy of the PFA order. Thus, he argues, there was no evidence that he saw the order's warning that it subjected him to prosecution under K.S.A. 2020 Supp. 21-6301. But proof of service is not an element of criminal use of weapons under K.S.A. 2020 Supp. 21-6301(a)(17). Rather, the State had to prove Wiley was subject to the PFA order, not that he received a copy of it. See PIK Crim. 4th 63.010. Even if Wiley never received a copy, the undisputed evidence shows that he knew about the PFA order. Nor does a conviction under K.S.A. 2020 Supp. 21-6301(a)(17) require notice of the warnings in the order; as discussed above, Wiley is presumed to know the law, including that the law prohibits possessing a firearm while subject to a PFA order.

Sufficient evidence supports Wiley's conviction. Viewing the evidence in the light most favorable to the State, a reasonable juror could find that he had an opportunity to participate in the PFA hearing preceding the order. We read the statute's knowledge requirement as requiring that Wiley had both knowledge of possessing a firearm and knowledge of his status as the subject of a PFA order, but not that he knew his status prohibited firearm possession. Under our reading, a reasonable juror could find that Wiley knowingly possessed a firearm while subject to a protective order.

3. *The district court did not violate Wiley's right to present a complete defense.*

Finally, Wiley asserts that the district court violated his constitutional right to present a defense when it sustained the State's objection to his attorney's closing argument. Ultimately, most of Wiley's argument on this issue restates his position about

13

K.S.A. 2020 Supp. 21-6301(a)(17)'s knowledge requirement, and the argument fails for the same reasons.

Appellate courts typically review a district court's limitations on closing argument for an abuse of discretion. *State v. McLinn*, 307 Kan. 307, 332, 409 P.3d 1 (2018). A court abuses its discretion if no reasonable person would agree with its decision or the decision is based on a legal or factual error. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). But under the Fourteenth Amendment to the United States Constitution, a criminal defendant has the right to present a complete defense. *State v. Suter*, 296 Kan. 137, 143-44, 290 P.3d 620 (2012). When a defendant claims the district court violated this right, appellate review is de novo. 296 Kan. at 144. The "right to present a defense is subject to the rules of evidence and caselaw on the subject." *State v. Bridges*, 297 Kan. 989, Syl. ¶ 3, 306 P.3d 244 (2013).

During closing arguments, Wiley's attorney argued:

"There was no evidence, no evidence, because I think the prosecution's theory is PFA court order equals can't have a firearm. But take a look at what instruction number two— or I'm sorry, element number two says, instruction four, did he receive actual notice of the final order, the court order. There was no testimony about that, zero and you can only consider—"

The State objected at this point, asserting that this argument—that the State had to prove Wiley received actual notice of the PFA order—misstated the law. The court agreed and sustained the objection.

The district court did not err when it sustained the State's objection to this line of argument. There is no requirement in K.S.A. 2020 Supp. 21-6301(a)(17) or the elements as instructed to the jury that Wiley have actual notice of the PFA order. Instead, the State had to prove that Wiley had actual notice of the *hearing* preceding the order, not the

order itself. See K.S.A. 2020 Supp. 21-6301(a)(17) (prohibiting possessing a firearm "while such person is subject to a court order that: (A) was issued after a hearing, of which such person received actual notice"). Thus, the State's objection was valid because Wiley's attorney was trying to argue a misstatement of the law.

A right to present a complete defense does not include a right to argue the State must prove an element that does not exist under the statute. Wiley's argument may have been valid had the case been about the merits of the PFA order itself. See K.S.A. 60-3108 (requiring that defendants receive a copy of protective orders). But to show that Wiley committed criminal use of a weapon under K.S.A. 2020 Supp. 21-6301(a)(17), the State only had to prove that Wiley had actual notice of the PFA hearing, not the order. See K.S.A. 2020 Supp. 21-6301(a)(17)(A); PIK Crim. 4th 63.010. And the evidence showed that Wiley not only knew about the hearing—he attended it—but also that he knew about the order. The district court did not err when it sustained the State's objection.

Wiley also reasserts his earlier argument about the knowledge requirement, arguing that State had to prove Wiley knew he was subject to the PFA order and thus he had a right to argue there was no evidence showing he received a copy of it. Once again, a conviction for criminal use of a weapon does not require proof that a defendant received a copy of the protective order. The undisputed evidence showed that Wiley knew about the order; whether he received a physical copy of it is irrelevant to a conviction for criminal use of a weapon under K.S.A. 2020 Supp. 21-6301(a)(17).

Wiley also argues that he had a right to make an argument about notice of the order because the State admitted the order into evidence and implied that Wiley was aware of its contents—including a warning that he could face prosecution for criminal use of a weapon. This warning merely stated the law, which Wiley is presumed to know no matter if he received the order. And even though the prosecution mentioned this warning in its closing argument, it only needed to prove that Wiley knowingly possessed

a firearm while subject to a PFA order—not that he knew the order prohibited possessing firearms. While the State's mention of the warning was unnecessary to prove the knowledge requirement, it did not require the district court to allow the defense to misstate the State's burden during closing arguments.

But even if fairness required the district court to allow Wiley's attorney to mention notice of the PFA order in closing argument after the State mentioned the warning in the order, any error was harmless beyond a reasonable doubt. See *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011) (constitutional error is harmless if benefitting party shows beyond a reasonable doubt that the error did not affect the outcome). Any closing argument about a lack of notice of the PFA order would not have affected the outcome. Undisputed evidence showed that Wiley knew about the order, telling the officers that he was subject to a PFA order right after they arrested him. The order also shows that Wiley attended the PFA hearing. Any argument that there was no evidence of notice would also contradict defense counsel's own acknowledgement that Wiley knew about the order. And any argument about a lack of evidence that Wiley was served with a copy of the order would have misstated the State's burden. The district court did not err when it limited Wiley's closing argument, and even if it did any error was harmless.

Affirmed.