**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

CHAD WAYNE KASPEREIT,

    Defendant - Appellant.

No. 19-6188

_____

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:18-CR-00297-R-1)**
_____

John P. Cannon of Cannon & Associates, PLLC, Edmond, Oklahoma for Defendant-Appellant Chad Wayne Kaspereit.

K. McKenzie Anderson, Assistant United States Attorney, Oklahoma City, Oklahoma (Timothy J. Downing, United States Attorney, with her on the brief), for Plaintiff-Appellee United States of America.
_____

Before **PHILLIPS**, **SEYMOUR**, and **CARSON**, Circuit Judges.
_____

**CARSON**, Circuit Judge.
_____

After one of Defendant Chad Wayne Kaspereit's many domestic violence incidents, a state court in Oklahoma instituted a protective order against him. While that order remained in effect, Defendant obtained two firearms from a sporting goods

store.  So a jury convicted Defendant of one count of lying in connection with the purchase of a firearm and one count of possessing a firearm as a prohibited person.  The district court imposed concurrent 120-month sentences.  Defendant now argues the Supreme Court's holding in Rehaif v. United States, 139 S. Ct. 2191 (2019), along with a lack of evidence against him, mandates a new trial on both counts.  He also argues that his sentence is unreasonable.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the judgment of the district court.

I.

In early September 2015, Defendant's then-wife, Brittany McCormick, petitioned an Oklahoma state court for an emergency protective order and initiated divorce proceedings.  The court granted an emergency protective order and set a hearing.  The parties appeared with counsel and agreed to continue the hearing for three days and consolidate it with a hearing on the divorce.  The parties appeared again, and, after the hearing, the state court continued the protective order indefinitely, saying it would "be reviewed before resolution of this case."  The court docketed the temporary protective order in the divorce and in the separate protective order action.  In fact, no review of the order occurred concurrent with the final divorce decree, and it remained in effect until dissolved by uncontested motion in February 2018.

Meanwhile, in December 2017, Defendant bought two handguns from an Academy sporting goods store.  As a part of that transaction, he filled out Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") Form 4473 (Firearms

Transaction Record).  On the form, Defendant certified he was "not subject to a court order restraining [him] from harassing, stalking, or threatening [his] child or an intimate partner or child of such partner."  Several months later, in March 2018, local law enforcement responded to an incident at Defendant's home, which he shared with his new spouse, Stephanie Carson.  Carson consented to a search of the home and vehicles, and officers discovered the handguns Defendant had purchased in December.  She filed for her own protective order, which an Oklahoma court granted, but that order is not at issue in this appeal.

A federal grand jury indicted Defendant on three counts: (1) making a false statement during the purchase of a firearm in violation of 18 U.S.C. § 922(a)(6), (2) possession of a firearm from December 2017 to February 2018 while subject to McCormick's protective order in violation of 18 U.S.C. § 922(g)(8), and (3) possession of a firearm while subject to Carson's protective order, in violation of the same.  After trial in May 2019, the jury returned a guilty verdict on counts one and two but acquitted on count three.  The district court sentenced Defendant to 120 months' imprisonment on each count to run concurrently, varying upward from the guidelines range.

Defendant filed this appeal making, essentially, two arguments.  First, that the Supreme Court's recent decision in Rehaif, 139 S. Ct. 2191, and the insufficiency of evidence against him demand an acquittal or a new trial.  As to count one, he says the jury lacked evidence showing he knew he was subject to the protective order when he bought the firearms.  As to count two, he says the jury lacked evidence of his

3

opportunity to participate in a hearing on the protective order and that the protective order remained in effect while he possessed the firearms. Second, he argues his sentence is substantively unreasonable.

## II.

We review legal sufficiency of evidence de novo, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences from the evidence in favor of the verdict. United States v. Wagner, 951 F.3d 1232, 1255 (10th Cir. 2020) (citing United States v. Isabella, 918 F.3d 816, 830 (10th Cir. 2019)). We consider all the evidence, both direct and circumstantial, but we will not weigh it or make credibility determinations. Id. at 1256 (citing Isabella, 918 F.3d at 830). We will reverse and acquit "only when no reasonable jury could find the defendant guilty beyond a reasonable doubt." Id. (quoting Isabella, 918 F.3d at 830).

We review the substantive reasonableness of a sentence for abuse of discretion. United States v. Sayad, 589 F.3d 1110, 1116 (10th Cir. 2009) (citing United States v. Friedman, 554 F.3d 1301, 1307 (10th Cir. 2009)). Thus, we will give substantial deference to the district court's determination and overturn a sentence as substantively unreasonable only if it is arbitrary, capricious, whimsical, or manifestly unjust. Id. (citing Friedman, 554 F.3d at 1307).

## III.

Before we can address the sufficiency of the evidence, we must resolve the parties' competing arguments about Rehaif, 139 S. Ct. 2191. In that case, the Supreme Court held that in a prosecution under 18 U.S.C. §§ 922(g) and 924(a)(2)

4

(for a prohibited person's possession of a firearm), the government must prove (1) the defendant knew he possessed a firearm and (2) the defendant knew he belonged to a category of prohibited persons. Rehaif, 139 S. Ct. at 2200. Until that decision, we (along with most other circuits) required only the first showing to establish a culpable state of mind. United States v. Games-Perez, 667 F.3d 1136, 1140–41 (10th Cir. 2012) (citations omitted), abrogation recognized in United States v. Benton, 988 F.3d 1231 (10th Cir. 2021). Defendant argues Rehaif should also apply to his conviction under § 922(a)(6) and that it requires a new trial on both counts. We disagree.

## A.

First, the Supreme Court explicitly limited the scope of its holding to prosecutions under 18 U.S.C. § 922(g), and thus Rehaif itself does not apply to prosecutions under § 922(a)(6). See 139 S. Ct. at 2200. Defendant acknowledges that fact but asks us to extend Rehaif's analysis and reasoning to § 922(a)(6), suggesting we should require the government to prove a defendant knew he belonged to a category of prohibited persons. Rehaif, however, does not question the validity of our long standing mens rea rule for conviction under that statute.

Section 922(a)(6) provides that

> it shall be unlawful . . . for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or

5

other disposition of such firearm or ammunition under the provisions of this chapter[.]

The statute requires the defendant know "of the facts that constitute the offense," Dixon v. United States, 548 U.S. 1, 5 (2006) (quoting Bryan v. United States, 524 U.S. 184, 193 (1998)), but it "does not establish a specific intent element," United States v. Elias, 937 F.2d 1514, 1518 (10th Cir. 1991). In terms of mens rea, then, a conviction under § 922(a)(6) only requires knowledge that the statement is false.

If the false statement is "I am not subject to a protective order," the government must prove the defendant knew he was, indeed, subject to a protective order. Although this may seem like a requirement that the defendant know of his membership in a prohibited class of persons (at least under these facts), § 922(a)(6) does not *necessarily* require that. We can imagine falsehoods unrelated to a person's § 922(g) status that could lead to prosecution under § 922(a)(6). So we decline to impose Defendant's proposed new requirement and narrow the scope of § 922(a)(6). Rehaif does not map to this provision and we will not apply it.

B.

Second, we agree with the government that Rehaif does not require that Defendant knew his status prohibited his possession of a firearm, just that he knew of his status—in this case that he was subject to a protective order such as the one described in § 922(g)(8). We recently expressed that opinion in a parallel case: United States v. Benton, 988 F.3d 1231 (10th Cir. 2021). We based our conclusion on Rehaif's specific language and on the meaning of the word "knowingly." Id. at

6

1236–39.  On one hand, "the knowledge requisite" to a "knowing violation of a statute is factual knowledge as distinguished from knowledge of the law."  Bryan, 524 U.S. at 192 (quoting Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 345 (1952) (Jackson, J., dissenting)).  On the other hand, "to establish a 'willful' violation of a statute, 'the Government must prove that the defendant acted with knowledge that his conduct was unlawful.'"  Id. at 191–92 (quoting Ratzlaf v. United States, 510 U.S. 135, 137 (1994)).

Neither statute nor caselaw shows that a violation of § 922(g) must be willful.  We do not read Rehaif to impose that requirement, nor do our sister circuits that have reached the question.  Benton, 988 F.3d at 1239–41.[1]  Rather, as Rehaif instructs, the statute requires that Defendant had factual knowledge that he (1) possessed a firearm and (2) was subject to a protective order.  Defendant also argues that because the district court's instructions and questions to the jury did not include the latter, we must overturn his conviction.  But, as we explain below, the jury found that Defendant knew he was subject to the protective order.

---

[1] Citing United States v. Maez, 960 F.3d 949, 954 (7th Cir. 2020) ("We do not read Rehaif as imposing a willfulness requirement on § 922(g) prosecutions."); United States v. Singh, 979 F.3d 697, 727 (9th Cir. 2020) ("The [Supreme] Court did not hold that the Government must also prove the defendant knew his or her status prohibited firearm ownership or possession."); United States v. Johnson, 981 F.3d 1171, 1189 (11th Cir. 2020) (agreeing with Maez); United States v. Robinson, 982 F.3d 1181, 1187 (8th Cir. 2020) (agreeing with Maez and Singh); United States v. Bowen, 938 F.3d 790, 797 (6th Cir. 2019) (reaching the same conclusion about a prosecution under § 922(g)(3)).

7

## IV.

We now address whether legally sufficient evidence supported the jury's verdict for each count. "[T]he evidence supporting a jury verdict must be substantial, but 'it need not conclusively exclude every other reasonable hypothesis and it need not negate all possibilities except guilt.'" United States v. Phillips, 583 F.3d 1261, 1264 (10th Cir. 2009) (quoting United States v. Burkley, 513 F.3d 1183, 1188 (10th Cir. 2008)). We reverse only if no reasonable jury could find the defendant guilty. Wagner, 951 F.3d at 1256.

## A.

The district court set out the following elements for conviction under 18 U.S.C. § 922(a)(6):

> FIRST: the Defendant made a false statement while obtaining a firearm from a licensed dealer;
>
> SECOND: the Defendant knew the statement was false; and
>
> THIRD: the statement was intended to or was likely to deceive the dealer about a material fact, i.e., a fact that would affect the legality of the transfer of the firearm from the dealer to the Defendant.

And the district court defined the following terms:

> The term "licensed dealer" means any firearms dealer who is licensed under federal law.
>
> A statement is "false" if it was untrue when made and was then known to be untrue by the person making it.
>
> A false statement is "likely to deceive" if the nature of the statement, considering all of the surrounding circumstances at the time it is made, is such that a reasonable person of ordinary prudence would have been actually deceived or misled.

8

Aside from the Rehaif argument we reject above, Defendant does not challenge these elements or definitions.

The indictment, incorporated as instruction three, charged that Defendant made a false and fictitious written statement to the Academy store in question (a licensed dealer), in connection with the acquisition of firearms, which statement he intended and was likely to deceive the store as to a material fact. In particular, he falsely represented and certified, on an ATF Form 4473 (Firearms Transaction Record), that he was not subject to a court order restraining him from harassing, stalking, and threatening an intimate partner and child of such partner when he knew he was subject to such an order.

Defendant contests only the second element: that he knew the statement was false (that is, he knew he was subject to a protective order). He relies on his own testimony that he thought, based on the advice of his attorney, David Hammond, he could legally possess a firearm. He argues Hammond corroborated that story. This argument has two flaws. First, the question is not whether Defendant knew the law prohibited him from possessing a firearm but whether he knew he was subject to a protective order. And second, Hammond did not corroborate his story. According to Hammond, he only confirmed Defendant had no felony convictions. They did not speak about the protective order and he never told Defendant the protective order was dissolved until after the February 2018 proceeding that dissolved it.[2]

---

[2] Defendant also relies on the state court's award of several firearms to him in the final divorce decree. He says this made him believe he could possess firearms.

On the other hand, the government offered ample evidence that Defendant knew the order remained in place. Brittany McCormick, Defendant's ex-wife who had filed for the protective order, testified that Defendant repeatedly asked her to agree to dissolve the order. She testified that he asked her "maybe every two or three months," including in "the fall of 2017." Additionally, Stephanie Carson, Defendant's partner throughout much of 2016 and 2017, testified to Defendant's keen awareness of the protective order, of its impact on his ability to purchase and possess firearms, and that it had not been dissolved. During their relationship, including fall 2017, Carson and Defendant had many conversations about the order, his desire to possess firearms, and his attempts to get the order dissolved by agreement or motion. We will not evaluate witness credibility or weigh evidence. Wagner, 951 F.3d at 1256. But, viewing the evidence in the light most favorable to the government, we conclude substantial and sufficient evidence supported the jury's finding that Defendant knew he made a false statement. In other words, the jury found, based on sufficient evidence, that Defendant knew he was subject to a protective order that "restrain[ed] him from harassing, stalking, and threatening an intimate partner and child of such partner." For these reasons, we affirm the conviction for count one.

---

Again, the question is simply whether he knew he was subject to the protective order. And, in any event, § 922(g) does not prohibit the *ownership* of firearms or the exercise of any of the rights of ownership save one: *possession*. Henderson v. United States, 135 S. Ct. 1780, 1784 (2015). So, although the divorce decree vested ownership of the firearms in Defendant, it could not restore his right to possess those firearms.

B.

The district court set out the following elements for conviction under 18

U.S.C. § 922(g)(8):

> FIRST: the Defendant knowingly possessed a firearm;
>
> SECOND: the Defendant was subject to a protective order at the time of possession; and
>
> THIRD: before the Defendant possessed the firearm, the firearm had moved at some time from some state to another or from a foreign country to the United States.

The court instructed the jury that the parties had stipulated to the third element. The

district court defined the following terms:

> The term "protective order" refers to a court order that
>
> (A) was issued after a hearing of which the Defendant received actual notice, and at which the Defendant had an opportunity to participate;
>
> (B) restrained the Defendant from harassing, stalking, or threatening his intimate partner, his child, or his intimate partner's child; or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to herself or such child; and
>
> (C)(i) included a finding that the Defendant represented a credible threat to the physical safety of such intimate partner or child, or (ii) by its terms explicitly prohibited the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury.
>
> The term "intimate partner" means, with respect to the Defendant, the spouse of the Defendant, a former spouse of the Defendant, an individual who is a parent of a child of the Defendant, and/or an individual who cohabitates or has cohabitated with the Defendant.
>
> The term "opportunity to participate" means that there was a proceeding during which the Defendant could have objected to the entry of the order or otherwise engaged with the court as to the merits of the restraining order. It is not required that the Defendant, or his counsel, attend such proceeding it

11

is only required that he had notice of the hearing and could have participated, if he attended it.

Again, aside from the <u>Rehaif</u> arguments we address above, Defendant does not challenge these elements or definitions.

The indictment alleged for count two that Defendant was subject to an order after a hearing of which he had received actual notice and at which he had an opportunity to participate, restraining him from harassing, stalking, and threatening his intimate partner, and from engaging in other conduct that would place such intimate partner in reasonable fear of bodily injury. It alleged that the order explicitly prohibited the use, attempted use, and threatened use of physical force against his intimate partner that would reasonably be expected to cause bodily injury. And finally, it alleged Defendant still knowingly possessed firearms in and affecting interstate commerce.

Defendant argues the jury had insufficient evidence to find he had an opportunity to participate in a hearing on the protective order. He also says the order was not still in effect when he bought and possessed the firearms.[3] The parties agree we should review both arguments for plain error because Defendant forfeited them.

---

[3] Defendant does not explicitly couch either of these arguments as a collateral attack on the validity of the underlying order. <u>Cf.</u> <u>United States v. Wescott</u>, 576 F.3d 347, 351–52 (7th Cir. 2009) (where the defendant argued that, although the protective order met the requirements of § 922(g)(8), it was void ab initio on other grounds and thus the court should vacate his conviction). In <u>Wescott</u>, the court distinguished such an attack from an argument that the order did not fall within the scope of § 922(g)(8) and dismissed it as impermissible. <u>Id.</u> <u>See also</u> <u>United States v. Reese</u>, 627 F.3d 792, 804–05 (10th Cir. 2010) (adopting the <u>Wescott</u> rule and noting the Eleventh, Ninth, Sixth, and Fifth Circuits had as well).

See Richison v. Ernest Grp., Inc., 634 F.3d 1123, 1127–28 (10th Cir. 2011) (citations omitted) (explaining that forfeiture occurs when a party fails to raise a theory, argument, or issue before the district court). To satisfy the plain error standard, "a party must establish the presence of (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. at 1128 (citing United States v. Zubia-Torres, 550 F.3d, 1202, 1208 (10th Cir. 2008)). Again, we conclude the jury had sufficient evidence to convict and the district court committed no error, let alone plain error.

1.

We have not divined exactly what Congress meant by "opportunity to participate" in § 922(g)(8). Today, we conclude that, at minimum, "opportunity to participate" means the defendant must have been present at a hearing on the protective order either in person or by counsel and have had an opportunity to object to the entry of, or otherwise engage with the court on the merits of, the order.[4] See

---

[4] In Wilson, the court concluded the defendant had an opportunity to participate, describing it this way:

> [T]he protective order was explained to Wilson and he was asked if he could live by those terms. While Wilson indicated that he could and the order was entered, he could also have told the judge that he disagreed with the order and given his reasons therefor. The record indicates that Wilson, although proceeding pro se at the time, had successfully persuaded another judge to vacate a default divorce that had been entered and then recuse himself from the case. Wilson was thus competent to lodge an objection to the protective order, and he was given the ability to do so. This is all that due process requires, and the district court correctly found that Wilson was not entitled to a judgment of acquittal.

Wilson, 159 F.3d at 290.

United States v. Wilson, 159 F.3d 280, 289–90 (7th Cir. 1998) (tying the

"opportunity to participate" to concepts of due process). Before a court deprives an

individual of a property interest, he must have an opportunity to be heard "at a

meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319,

333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). A meaningful

manner includes "the opportunity to present reasons, either in person or in writing,

why proposed action should not be taken."[5] Cleveland Bd. of Educ. v. Loudermill,

---

[5] Other circuits have followed and adopted Wilson. United States v. Spruill, 292 F.3d 207, 210–11, 217, 220 (5th Cir. 2002) (adopting Wilson but concluding that, because the defendant agreed to the protective order out of court without a hearing, "no hearing was ever set," "[defendant] received no notice of any hearing," and "[defendant] never appeared before a judge," so there was no opportunity to participate); United States v. Banks, 339 F.3d 267, 270–71 (5th Cir. 2003) (clarifying Spruill by rejecting the idea that an agreed order can never satisfy § 922(g)(8) and finding that "[defendant] had an opportunity to put on evidence, but he did not avail himself of that opportunity. . . . [T]he hearing in this case was set for a particular time and place and . . . [defendant] did appear before a judge and had an opportunity to contest the protective order."); United States v. Calor, 340 F.3d 428, 431 (6th Cir. 2003) (concluding the state-court proceeding satisfied the statute's requirement because "[defendant] could have presented reasons why the court should not enter an order finding that he posed a credible threat to the safety of his wife or child . . . . That [defendant] elected to waive his opportunity to participate does not alter his status under § 922(g)(8)."); United States v. Lippman, 369 F.3d 1039, 1042 (8th Cir. 2004) (noting "[a] hearing requires actual notice and an opportunity to be heard, but the statute does not require that evidence actually have been offered or witnesses called. As the Seventh Circuit explained in [Wilson], 'hearing' and 'opportunity to participate' are not arcane legal terms incomprehensible to the general public, and no further definition is needed for the jury." And finding the case met the requirement because "[defendant] received notice of the hearing and appeared before a judge who was prepared to hear evidence."); United States v. Young, 458 F.3d 998, 1009 (9th Cir. 2006) (agreeing that "the plain text of the statute indicates that the 'opportunity to participate' requirement is a minimal one. The prosecution must only show an opportunity to participate; that is, a proceeding during which the defendant *could* have objected to the entry of the order or otherwise engaged with the court as to the merits of the restraining order.").

14

470 U.S. 532, 546 (1985). The government satisfies its burden if it presents legally sufficient evidence to show that a reasonable person would have understood the hearing as a chance to raise an objection, even if the defendant agrees to the order or does not otherwise object.[6] United States v. Brammer, 956 F.3d 91, 98–99 (2d Cir. 2020). This standard satisfies, but does not expand, the statute's plain meaning.

Here, the state court imposed an ex parte order on September 3, 2015. The parties and their counsel, including Defendant, appeared on September 14 and agreed to continue the existing order to September 17 when they would reconvene for a hearing on the divorce. On September 17, the parties again appeared with counsel, made arguments, presented witnesses, and advised the court on the merits of the

---

[6] The Second Circuit agreed with Wilson and the cases cited in note 5, supra, saying "the statute does not require representation or participation by counsel, and that the requirement may be 'a minimal one.'" Brammer, 956 F.3d at 98 (quoting Young, 458 F.3d at 1009). But the government put on insufficient evidence in that case. Id. at 98–99. The court described it this way:

> [T]he evidence in the record about the proceeding only allows us to conclude that Bramer attended it, that Bramer was not physically prevented from speaking, and that the judge explained to Bramer the charges against him and what an order of protection was. . . . [T]he record demonstrates no more than the judge simply issued the protection order as a matter of course on arraignment day in a "fairly busy" court—a far cry from the set of exchanges found sufficient in Young, 458 F.3d 998, to indicate an opportunity to participate in the proceedings. The court scheduled a second appearance within the next month—one that would presumably be more extensive and would involve considering the merits of continuing the temporary injunction. Where, as here, the government has presented no evidence of anything more than a state proceeding at which Bramer was present and where an order of protection was issued, no rational jury could conclude that Bramer had an "opportunity to participate" in that proceeding.

Id.

15

protective order. The jurors heard testimony to this effect, and the government showed them the state court's orders memorializing both hearings. This substantial and sufficient evidence supported the jury's finding that Defendant had an opportunity to participate in the hearings on September 14 and 17.

2.

Lastly, Defendant argues the protective order was not in effect when he purchased and possessed the firearms. We will not consider this argument to the extent Defendant collaterally attacks the order's validity under Oklahoma law. See supra note 3. Thus, we confine our review strictly to whether the government put on sufficient evidence for the jury to find the order was in effect.

After the September 17 hearing, the court entered the protective order on both the divorce docket and the separate protective order docket, and the order bore both case numbers. The order said, "The Protective Order in PO 15-185 [protective order case] shall remain in full force and effect as a Temporary Order, except as modified for visitation and for purposes of resolution of any Child Welfare case by Oklahoma DHS. The Protective Order shall be reviewed before resolution of this case." The parties agree that, whether intentionally or not, the state court did not review the protective order at the resolution of the divorce case.[7] But the docket sheet for the protective order case shows no activity between the entry of the order and the

---

[7] Any alleged legal error arising from the state court's failure to review the protective order at the resolution of the divorce case constitutes a collateral attack on the protective order. As does any allegation the state court erred under Oklahoma law by permitting the temporary order to remain in effect.

16

proceeding to dissolve the order in early 2018. And no evidence shows that any order entered in the divorce case dissolved the protective order. As Defendant points out, the final divorce decree did not explicitly continue the protective order—but it also did not dissolve the protective order.

Contrary to Defendant's assertion, it remains unclear that the court or the parties tied the life of the protective order to the life of the divorce case. Although the parties' and the court's intent may have been to *review* the order at the resolution of the divorce, the order says no more on the subject. The evidence does not show that the parties or the court intended the order to *expire* upon the resolution of the divorce. Furthermore, Brittany McCormick testified she believed the protective order to be in full effect after the divorce. And, as discussed above, the government offered ample evidence showing Defendant believed the same.

Setting aside Defendant's collateral attacks, nothing suggests that the state court dissolved the protective order before February 2018. The jury had substantial and sufficient evidence to find the order remained in effect during the time described in count two. Thus, we affirm as to that count. The district court did not err in denying a judgment of acquittal or a new trial.

V.

Finally, we conclude Defendant's sentence is substantively reasonable. The district court did not, as Defendant believes, *depart* from the guidelines range. A departure is a deviation from the calculated guidelines range based on the enumerated departure provisions in the Guidelines Manual. United States v. Sells, 541 F.3d

17

1227, 1237 n.2 (10th Cir. 2008) (citing United States v. Atencio, 476 F.3d 1099, 1101 n.1 (10th Cir. 2007)). On the other hand, a variance occurs when the district court deviates from the guidelines range based on the sentencing factors in 18 U.S.C. § 3553(a) and his responsibility to impose a sentence that is "sufficient" but "not greater than necessary" to meet the sentencing objectives in that provision. Id. (citing Atencio, 476 F.3d at 1101 n.1). Here, the district court's statement of reasons shows a *variance*.

While a case involving a departure (and thus a question of guidelines application) opens the door to a procedural reasonableness challenge, we review a variance for substantive reasonableness. See Sayad, 589 F.3d at 1116; United States v. Smart, 518 F.3d 800, 804 (10th Cir. 2008). To preserve a substantive reasonableness challenge, we only require that a defendant advocate for a shorter sentence than the one imposed. Holguin-Hernandez v. United States, 140 S. Ct. 762, 766–67 (2020). Here, Defendant thoroughly litigated for a sentence less than he received. And therefore we apply the ordinary standard of review—abuse of discretion—rather than the plain error standard Defendant invokes.

We must determine "whether the length of the sentence is reasonable given all the circumstances of the case in light of" the § 3553(a) factors. United States v. Durham, 902 F.3d 1180, 1238 (10th Cir. 2018) (quoting United States v. Verdin-Garcia, 516 F.3d 884, 895 (10th Cir. 2008)). We reverse only if "the district court abused its discretion in weighing permissible § 3553(a) factors in light of the 'totality of the circumstances.'" Sayad, 589 F.3d at 1118 (quoting Gall v. United States, 552

18

U.S. 38, 51 (2007)). Because the district court has "an unquestionable institutional advantage over an appellate court to consider whether the facts of an individual case justify a variance," we "give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." Id. at 1116 (citations omitted). "The fact that [we] might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." Id. (quoting Gall, 552 U.S. at 51). So we will affirm so long as the district court's decision "falls within the realm of [the] rationally available choices." United States v. McComb, 519 F.3d 1049, 1053 (10th Cir. 2007).

Defendant's arguments and authorities apply to the departure context, rather than the variance context. But, still, he makes two key concessions. First, the district court did not rely on impermissible factors. And second, the record supports the district court's factual basis. So he focuses exclusively on reasonableness. He says the district court ignored the guidelines range and did not consider a downward departure, the sentence given "cannot be supported," and the court's decision "was based upon other factors not inclusive of the crime that was actually charged."

First, while we "take the degree of variance into account," we will not "use the percentage of [the variance] as the standard for determining the strength of the justifications required." Gall, 552 U.S. at 47. So, although this sentence fell significantly above the guidelines range, that does not set our course. Second, the district court considered the presentence report and the guidelines range, as well as Defendant's sentencing memorandum, which argued for a sentence below that range.

19

The district court also considered the § 3553(a) factors, including the nature and circumstances of the offense and Defendant's history and characteristics, and found that public safety and the safety of Defendant's former partners warranted the variance.

We have said that "possession of a firearm while subject to a domestic protection order . . . involve[s] a substantial risk, resulting from the nature of the offense, that physical force may be used against the person or property of another." United States v. Rogers, 371 F.3d 1225, 1228 (10th Cir. 2004). And that "[a] defendant whose background includes domestic violence which advances to . . . the imposition of a protection order has a demonstrated propensity for the use of physical violence against others." Id. at 1228–29. Defendant's criminal history category did not reflect his pattern of domestic violence, of which the record contained ample evidence and which the presentence report detailed. And the record shows that Defendant severely assaulted at least one domestic partner with a firearm at issue in the case and consistently abused her and others in many ways. The district court's determination that Defendant posed a significant risk to the safety of others comports with our cases and instructions.

Defendant does not offer arguments (beyond mere conclusions) to suggest the district court abused its discretion in weighing the factors given the totality of circumstances. Nor are we persuaded that any abuse occurred.

20

The district court's chosen sentence falls within the realm of rationally available choices and not within the realm of the arbitrary, capricious, or whimsical.

AFFIRMED.