**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

FILED
United States Court of Appeals
Tenth Circuit

**April 3, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

BRENTON CHRISTOPHER SANDERS,

    Defendant - Appellant.

No. 23-6103
(D.C. No. 5:22-CR-00296-JD-1)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, **EID**, and **ROSSMAN**, Circuit Judges.[**]
_____

Brenton Christopher Sanders was sentenced to 45 months' imprisonment after pleading guilty to domestic violence charges. He argues on appeal that his sentence was substantively unreasonable. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm. The district court properly analyzed the § 3553(a) factors, thoroughly supported its decision to apply an upward variance, and imposed a sentence that was

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

within reasonable bounds.  Accordingly, the district court did not abuse its discretion in sentencing Mr. Sanders.

## I. Background

Brenton Christopher Sanders and C.S. began dating in 2006.  The two eventually married in 2008 and share three children together.  C.S. alleges that Mr. Sanders began abusing her in late 2009 or early 2010, though she did not seek medical treatment during the abusive relationship because she lacked medical insurance and could not afford treatment.  R. Vol. II at 43.

On August 22, 2017, police officers arrested Mr. Sanders and he was charged with domestic abuse in the presence of a minor.  R. Vol. II at 12.  C.S. called the police, alleging that Mr. Sanders "threw a remote, placed his hands around her throat and choked her until she blacked out, and kicked in the bathroom door when she tried to get away from him."  R. Vol. II at 14.  Mr. Sanders left the home after C.S. called the police and "attempted to pick up their daughters from school, but the elementary school called law enforcement[.]"  R. Vol. II at 12.  When he returned to their residence to retrieve his phone, Mr. Sanders tried to run over C.S. as she attempted to take a photo of his license plate.  R. Vol. II at 14.  Police officers who were present observed this and arrested Mr. Sanders.  R. Vol. II at 14.  Mr. Sanders eventually pleaded guilty, receiving a deferred one-year sentence.  R. Vol. II at 14.

On October 17, 2020, C.S. and Mr. Sanders got into another altercation, this time over Mr. Sanders's recently-revealed affair with another woman—M.H.  Mr. Sanders placed C.S. into a choke hold and broke her cell phone when she tried to call

2

911.  The altercation continued into the night.  Around 5:30 a.m. on October 18, 2020, C.S. called her mother (D.H.).  When C.S.'s mother arrived at the residence to pick up C.S. and the children, Mr. Sanders again became violent, striking C.S. in the face multiple times.  At this point, one of the Sanders' children (Z.S.) tried to call 911, but Mr. Sanders took the house phone away, broke it, and threatened that if Z.S. called the police "it would be the last thing [Z.S.] ever [did]."  R. Vol. II at 7.  As C.S.'s mother called the police, Mr. Sanders told C.S.'s mother "[i]f you call the police, I will shoot [C.S.] and she will be dead before the police get here."  R. Vol. II at 29.

Minco Police arrived at the residence.  Upon arrival, Officer Ryan Clanton, at gunpoint, commanded Mr. Sanders to show his hands.  R. Vol. II at 7.  Instead, Mr. Sanders immediately grabbed another one of his children (A.S.) and picked him up with enough force to cause red bruising marks on A.S.'s stomach and arm—apparently holding on to him as a human shield (though Mr. Sanders denies the "human shield" interpretation of events).  R. Vol. II at 7, 9.  Mr. Sanders sat on a chair on the porch holding on to A.S., as Officer Clanton continued to issue commands for him to comply.  R. Vol. II at 7.  Mr. Sanders eventually complied and was taken into custody.

The State of Oklahoma charged Mr. Sanders with four total counts: felony child abuse; misdemeanor domestic assault and battery in the presence of a minor; and two counts of disrupting, preventing, or interfering with an emergency 911 telephone call.  R. Vol. II at 13.  Mr. Sanders was released on bond on December 2,

3

2020, but was arrested on February 9, 2022, for failing to appear at his preliminary hearing. R. Vol. II at 6. On April 15, 2022, the State of Oklahoma dismissed the charges against Mr. Sanders and released him following the ruling in *McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020).[1]

On July 21, 2022, the United States then charged Mr. Sanders with felony assault by strangulation under the Major Crimes Act, and two counts of felony child abuse under the Assimilative Crimes Act. R. Vol. II at 5. On December 2, 2022, Mr. Sanders pleaded guilty to the single count of felony assault by strangulation, admitting that he "knowingly assaulted his spouse, C.S., by strangling and attempting to strangle her in a way that intentionally, knowingly, and recklessly impeded her normal breathing circulation." R. Vol. I at 24.[2]

Under Mr. Sanders's plea agreement, he waived the right to appeal his sentence, including the "manner in which the sentence [was] determined" and its

---

[1] On May 28, 2022, Mr. Sanders and M.H. "had been arguing." R. Vol. II at 8. M.H. alleged that Mr. Sanders "grabbed her around the neck with one hand and pushed her away from him." R. Vol. II at 8. Apparently, this incident occurred while M.H. was "in the hospital for congestive heart failure." R. Vol. II at 35. On June 6, 2022, before Mr. Sanders's federal indictment, M.H. filed a protective order against Mr. Sanders based on that incident. She stated in the application that Mr. Sanders "choked her and hit her in the leg, while in the hospital, which caused her to stay longer in the hospital and use a walker until her leg heal[ed]." R. Vol. at 15. The FBI interviewed Mr. Sanders about the incident July 27, 2022. R. Vol. II at 8. Mr. Sanders denied strangling M.H., but acknowledged "push[ing] [M.H.] off by her throat" after she "bit his lip." R. Vol. II at 9. Both Mr. Sanders and M.H. failed to appear at the hearing so the protective order was dismissed. R. Vol. at 15.

[2] Based on the plea agreement, the two counts of felony child abuse were dismissed at sentencing. R. Vol. I at 32, 54.

"procedural reasonableness." R. Vol. I at 29. But Mr. Sanders retained the right to appeal the "substantive reasonableness" of his sentence "[i]f the sentence [was] above the advisory Guidelines range determined by the court to apply to [Mr. Sanders's] case." R. Vol. I at 29. According to his Presentence Investigation Report ("PSR"), Mr. Sanders's sentencing range under the Guidelines was 27–33 months, but the United States requested that the court apply an upward variance and instead impose a sentence of 48 months. R. Vol. II at 31. Mr. Sanders objected, R. Vol. II at 26, requesting instead a 27-month sentence, R. Vol. I at 46.

At sentencing, the district court heard testimony from FBI agent Nathan Wilkins, statements from Mr. Sanders, and arguments from counsel for the United States and Mr. Sanders. *See generally* R. Vol. III. After considering the factors under 18 U.S.C. § 3553(a), the district court overruled Mr. Sanders's objections to an upward variance and granted the government's motion for the same. R. Vol. III at 74:24–75:06. As a result, the district court varied upwards from a calculated Guidelines range of 27-33 months and imposed a 45-month sentence followed by 3 years of supervised release. Mr. Sanders timely appealed.

## II. Discussion

Mr. Sanders argues the district court abused its discretion when it (1) varied upwards from a calculated Guidelines range of 27-33 months, and (2) imposed a 45-month sentence. We disagree.

5

### A.    Standard of Review

"[W]hen the district court varies from the advisory Guidelines range through application of the § 3553(a) factors, we simply consider whether the length of the sentence is substantively reasonable utilizing the abuse-of-discretion standard." *United States v. Alapizco-Valenzuela*, 546 F.3d 1208, 1216 (10th Cir. 2008).  *See also United States v. Kaspereit*, 994 F.3d 1202, 1214 (10th Cir. 2021) ("[W]e review a variance for substantive reasonableness.").  "In applying this standard of review to a sentence above the guideline range, we 'may consider the extent of the deviation, but must give due deference to the district court's decision that the 18 U.S.C. § 3553(a) factors, on a whole, justify the extent of the variance.'"  *United States v. Worku*, 800 F.3d 1195, 1207 (10th Cir. 2015) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)).

Keeping these principles in mind, we turn to Mr. Sanders's sentence.

### B.    Original Sentencing

The district court properly considered the § 3553(a) factors, and thoroughly explained its reasoning for varying upwards from the 27-33 months Guidelines range and imposing instead a 45-month sentence.  Where—as here—"a district court decides to vary, it properly engages in the § 3553(a) inquiry when it bases its decision on specific, articulable facts supporting the variance and does not employ an impermissible methodology or rely on facts that would make the decision out of bounds."  *United States v. Barnes*, 890 F.3d 910, 916 (10th Cir. 2018).

6

The district court first weighed and considered Mr. Sanders's personal history and characteristics, describing his history as "tragic and sympathetic" and acknowledging Mr. Sanders grew up in a "household full of abuse and trauma." R. Vol. III at 69:16-18.

Next, the district court weighed and considered Mr. Sanders's criminal history, which included convictions for leaving the scene of an accident, public intoxication, domestic abuse, and disturbing the peace, R. Vol. III at 72:05-09, as well as various protective orders. R. Vol. III at 72:10-15. The district court recognized that Mr. Sanders's prior convictions were only "misdemeanor[s]," but the court considered those misdemeanors along with the "protective orders in paragraphs 53 through 57" of the PSR and determined that Mr. Sanders's criminal history score "underrepresented" Mr. Sanders's violent tendencies and criminal behavior. R. Vol. III at 72:10-15; R. Vol. II at 14-15 (PSR).[3]

The court also considered the "types of consequences and the sentences" Mr. Sanders received from his prior misdemeanor convictions and concluded that

---

[3]  One example of a misdemeanor was a conviction for disturbing the peace—for which Mr. Sanders received zero criminal history points. Mr. Sanders was "originally charged with Obstructing [an] Officer" after an incident with a security officer in a courtroom. R. Vol. II at 12. After the security officer instructed Mr. Sanders to stop using a cell phone in a courtroom, Mr. Sanders became combative and began cursing. R. Vol. II at 12.

Regarding protective orders, in addition to the ones that C.S. and M.H. filed against him, a neighbor also filed a protective order against Mr. Sanders (and C.S.), accusing them of "verbally abus[ing], harass[ing], and threaten[ing]," her husband, her daughter, her mother, and her daughter's friends. R. Vol. II at 14. The protective order was dismissed because of insufficient evidence. R. Vol. II at 14.

they neither "deterred" Mr. Sanders's "criminal conduct" nor caused Mr. Sanders to "respect the law." R. Vol. III at 72:20-23. On that basis, the district court concluded there was a need for the sentence imposed "to protect the public from further crimes [from Mr. Sanders] and to deter [Mr. Sanders] personally from criminal conduct." R. Vol. III at 72:17-19.

As for the nature of the offense, the court stated plainly that "[a]ssault by strangulation is a very serious offense," R. Vol. III at 73:01, considering both the violent circumstances of the crime and the impact on the victim, R. Vol. III at 73:10-12. The court also noted that "[c]hildren were present during [Mr. Sanders's] offense," one of whom Mr. Sanders "grabbed" when the officer arrived. R. Vol. III at 73:13-15. Given the "violent nature" of the crime and the fact that children were "expos[ed]" to it, the district court concluded that the offense was "more serious" than other crimes. R. Vol. III at 73:25–74:02.

Based on these conclusions, the district court overruled Mr. Sanders's objections to an upward variance and granted the government's motion. R. Vol. III at 74:24–75:06. As a result, the court varied upwards from a calculated Guidelines range of 27-33 months and imposed a 45-month sentence, explaining:

> I do not believe the advisory guideline range of 27 to 33 months' imprisonment adequately accounts for the seriousness of the offense, provides just punishment, deters you, and protects the public from further crimes from you.
>
> I don't think it accounts for your violent tendencies. I don't think it accounts for the fact minor children were involved. And I don't think your prior criminal convictions or protective orders have deterred you or caused you to respect

8

the law, which is particularly concerning given your age of 38.

As I noted, I have thoroughly considered the mitigation offered by your counsel, the arguments made, and the fact that you have never spent a significant time in prison, and that this is your first felony conviction.

But the concerns I have here about the seriousness of the offense, providing a just punishment for this offense, deterrence, protection of the public, and promoting respect for the law outweigh those arguments, in my mind. Moreover, you have not been deterred from criminal conduct despite being given multiple opportunities before.

R. Vol. III at 74:03–75:02.

In conclusion, the district court appropriately considered the § 3553(a) factors. And given all the circumstances of the case and the factors set forth in 18 U.S.C. § 3553(a), the resulting sentence the district court imposed on Mr. Sanders was substantively reasonable.

### C.     Mr. Sanders's Objections

Mr. Sanders disagrees. He presents three arguments for why the district court abused its discretion in applying an upward variance and imposing an above-Guideline sentence. *First*, he argues that the district court erred in finding that his criminal history score underrepresented his violent tendencies and criminal behavior score because his record sufficiently captured this and insufficiently justified upward variance. Aplt. Br. at 14. *Second*, he argues that the district court's finding that minor children were present during the offense does not justify a variance and is thus arbitrary, capricious, whimsical, and manifestly unreasonable. Aplt. Br. at 16.

*Third*, he argues that because non-Indian defendants in the same area receive a dramatically lighter sentence than he would, his sentence is manifestly unreasonable. Aplt. Br. 20.  Mr. Sanders's arguments lack merit.

### 1. Criminal History Score

Mr. Sanders first contends the district court's determination that his criminal history score underrepresented his violent tendencies and criminal behavior constitutes "manifestly unreasonable" grounds for an upward variance.  Aplt. Br. at 12.

Not so.  District courts permissibly upward vary a sentence when they properly determine that a defendant's criminal history score underrepresents their actual criminal behavior.  *See*, *e.g.*, *United States v. Walker*, 74 F.4th 1163, 1206 (10th Cir. 2023). (holding that district court was within its discretion to determine that defendant's escalating use of violence justified a significantly longer sentence.); *Kaspereit*, 994 F.3d at 1215 (affirming district court's determination that criminal history category did not accurately reflect defendant's history of domestic violence).

Mr. Sanders counters that certain incidents in his presentence report were insufficiently proven to properly support increasing his sentence: 1) the "2015 protective order filed by a neighbor" was "denied due to insufficient evidence"; 2) the "2008 misdemeanor for battery" where "no records exist"; and 3) the M.H. protective order.  R. Vol. II at 15.

This argument fails and does not change the result.  Mr. Sanders neither challenged the accuracy of these facts nor objected to including them in the PSR.  So

10

the facts underlying these protective orders are deemed admitted as true. *See* Fed. R. Crim. P. 32(i)(3)(A). Plus, Mr. Sanders cites no authority that precluded the district court from varying its sentence based on these particular incidents detailed in his PSR. "[E]xtrapolat[ing] from the uncontested facts in the PSR," the district court properly "dr[ew] conclusions about characteristics relevant to sentencing factors enumerated in 18 U.S.C. § 3553(a)," *United States v. Mateo*, 471 F.3d 1162, 1167 (10th Cir. 2006), and found that public safety warranted an upward variance. Regardless—as the government points out—"Mr. Sanders'[s] violent history was not the only factor upon which the district court relied in finding the variance was warranted." Aple. Br. at 12.

Mr. Sanders argues that the district court's "criminal history analysis" is nevertheless unreasonable because he "would have needed 7 criminal history points instead of 3 to be moved to a category that included [the] 45 months [sentence]" the district court imposed. Aplt. Br. at 14. An "absence of a case" worth seven criminal history points (e.g., an uncharged felony) is therefore "perplexing." *Id.*

This speculation neither controls nor computes. To be sure, "a major variance should have a more significant justification than a minor one[.]"*Walker*, 74 F.4that 1203. But Mr. Sanders cites no authority and makes no argument for why we should consider his variance from 27-33 months to 45 months a major one. Nor has Mr. Sanders made any attempt to show that his sentence fell outside the "range of rationally available choices that facts and the law at issue can fairly support." *United States v. Blair*, 933 F.3d 1271, 1274 (10th Cir. 2019).

11

In any event, we "do not apply a rigid mathematical formula that uses the percentage of a departure [or variance] as the standard for determining the strength of the justifications required for a specific sentence." *United States v. Garcia*, 946 F.3d 1191, 1212 (10th Cir. 2020) (internal quotations omitted) (brackets in original). That a 7-point increase would have sufficed to move Mr. Sanders to a category that included a 45-month sentence does not imply that a 7-point incident (e.g., an uncharged felony) was required to justify Mr. Sanders's 45-month sentence— particularly given the finding that Mr. Sanders's criminal history points underrepresented his criminal propensity. *See*, *e.g.*, *United States v. Adams*, 751 F.3d 1175, 1183 (10th Cir. 2014) (rejecting contention that the district court improperly varied upward and, given defendant's "history of repeated criminal offenses," affirming sentence as substantively reasonable). And given that the district court's finding about Mr. Sanders's criminal propensity is well-supported, we "give due deference" to the district court's decision that the § 3553(a) factors "justify the extent of the variance." *Worku*, 800 F.3d at 1207. Mr. Sanders's arguments to the contrary are "nothing more than a disagreement with the district court about how the evidence should be evaluated and weighed." *United States v. Branson*, 463 F.3d 1110, 1112 (10th Cir. 2006).

### 2. *Children's Exposure to Domestic Violence*

Mr. Sanders argues that the district court's upward variance decision is "based solely" on "the vague finding that C.S. and Mr. Sanders's children were exposed to

12

domestic violence by this incident." Aplt. Br. at 16. The district court did not apply an upward variance based solely on the children's exposure to domestic violence. Therefore, Mr. Sanders's argument is meritless.

Even still, the district court did not abuse its discretion in considering the nature and circumstances of Mr. Sanders's offense, § 3553(a)(1), which necessarily included considering the presence of his children and their involvement. R. Vol. III at 73:13-15.[4] "[T]he nature and circumstances of the offense committed by a defendant can include more than the offense of which he was convicted." *United States v. Gantt*, 679 F.3d 1240, 1250 (10th Cir. 2012). The record evidence showed that Mr. Sanders's conduct substantially involved the children in the domestic dispute, and it was neither irrelevant nor unrelated to consider whether involving those children made Mr. Sanders's conduct more serious. *See, e.g.*, *United States v. Pinson*, 542 F.3d 822, 838 (10th Cir. 2008) ("[W]hen a defendant is convicted of making threats of violence it is not unrelated to consider whether his threats pose an actual danger to the public."); *United States v. Rogers*, 371 F.3d 1225, 1228-29 (10th Cir. 2004) ("A defendant whose background includes domestic violence which advances to either a criminal conviction or the imposition of a protection order has a demonstrated propensity for the use of physical violence against others."); *United*

---

[4] *See also* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

13

*States v. Rogers*, 798 F. App'x 309, 311-12 (10th Cir. 2020) (permitting enhancement where facts of offense did not fully capture the wholly unacceptable and outrageous conduct of the actual assault).

Nor did the district court err in concluding that the presence of children made Mr. Sanders's particular domestic offense "more serious," justifying an upward variance to ensure the sentence imposed "reflect[ed] the seriousness of the offense." 18 U.S.C. § 3553(a)(2)(A). A district court "can vary from the guidelines so long as it does not do so arbitrarily and capriciously." *Worku*, 800 F.3d at 1208 (10th Cir. 2015). Here, the district court did not arbitrarily conclude that a longer sentence was needed. Instead, it reasoned that the severity of Mr. Sanders's crime, as well as the particular vulnerability of the children present as bystanders, justified a longer sentence to reflect the offense's increased seriousness. R. Vol. III at 74:3-5 (considering the "violent nature" of offense occurred in front of children "old enough to recall" and be "impacted" by it). Mr. Sanders does not explain why this reasoning and determination are unreasonable under § 3553(a) factors.

### 3. *Indian status and state and federal sentencing disparities*

Finally, Mr. Sanders's argues that his "status as an Indian" subjects him to "harsher punishment not received by similarly situated non-Indians," Aple Br. at 18, contravening the factor discouraging "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553 (a)(6).

14

But our precedent forecloses this argument. *See United States v. Branson*, 463 F.3d 1110, 1112 (10th Cir. 2006); *United States v. Wiseman*, 749 F.3d 1191, 1196 (10th Cir. 2014). "Federal and state authorities have concurrent jurisdiction over various offenses and may apply disparate punishments to similar conduct" and "[a]djusting federal sentences to conform to those imposed by the states where the offenses occurred would not serve the purposes of § 3553(a)(6), but, rather, would create disparities within the federal system, which is what § 3553(a)(6) is designed to discourage." *Branson*, 463 F.3d at 1112.

In *United States v. Begay*, we held that "the disproportionate effect of a sentencing disparity on Native Americans . . . does not permit us to review federal/state disparities under § 3553(a)(6)." 974 F.3d 1172, 1177 (10th Cir. 2020). That Mr. Sanders is a Native American and the defendant in *Branson* was not, "does not permit us to review federal/state disparities under § 3553(a)(6)." *Id.*; *see, e.g.*, *United States v. Whiteman*, No. 21-8095, 2022 WL 4857253, at *6-7 (10th Cir. Oct. 4, 2022).

Accordingly, we **AFFIRM** Mr. Sanders's sentence as substantively reasonable.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge

15