FILED
**United States Court of Appeals**
**Tenth Circuit**

**March 24, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MARK RYAN JORDAN,

    Defendant - Appellant.

No. 25-6125
(D.C. No. 5:24-CR-00519-SLP-1)
(W.D. Okla.)

_____

## ORDER AND JUDGMENT[*]

_____

Before **PHILLIPS**, **EID**, and **FEDERICO**, Circuit Judges.

_____

Mark Ryan Jordan pled guilty to a charge of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  He received a 120-month prison sentence.  Mr. Jordan appeals, challenging the sentence as substantively unreasonable.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. Background

On October 16, 2024, a witness identified as W.P.[1] reported to sheriff's deputies that Mr. Jordan had pulled his truck into W.P.'s yard to drop off W.P.'s ex-wife. W.P. told Mr. Jordan repeatedly to get out of his yard, and when Mr. Jordan finally started backing up, W.P. followed on foot. Mr. Jordan then pointed a firearm at W.P. and threatened to shoot him. W.P. told the deputies his ex-wife and three-year-old daughter had been in Mr. Jordan's truck during the entire exchange.

Nearly two weeks later, a witness identified as A.C. reported to sheriff's deputies that she and her minor daughter had been the victims of a road-rage incident. They had been tailgated by a man, later identified as Mr. Jordan, who was yelling and gesturing at them. At one point he exited his vehicle and struck A.C.'s vehicle with his hand, then returned to his vehicle to continue following them. When A.C. and her daughter pulled into a gas station to call the police, Mr. Jordan followed into the parking lot and pointed a firearm at them before driving away. During their investigation of the incident, deputies learned Mr. Jordan had stolen a shotgun from his sister earlier that day, and when the sister demanded its return, he responded that he intended to block off Interstate 35 and have a shootout with the police.

Later that evening, deputies were dispatched to the home of Mr. Jordan's estranged wife, E.J. She reported that Mr. Jordan had said he was going to kill her and then get into a shootout with the police. At the deputies' urging, E.J. relocated to

---

[1] The district court record identified the witnesses to Mr. Jordan's conduct only by their initials.

her parents' home.  The deputies later returned to E.J.'s home and discovered a front window had been shattered by a shotgun blast.  Security footage later showed Mr. Jordan's vehicle stop in front of the residence, followed by a gunshot and muzzle flash coming from the vehicle.

After arriving at her parents' home, E.J. and the deputies were coordinating an emergency protective order when they observed Mr. Jordan drive past the house, make a U-turn, and drive past again.  The deputies then took Mr. Jordan into custody and observed he was wearing an ammunition pouch containing seven rounds of ammunition.  They also found a loaded shotgun in Mr. Jordan's vehicle, along with six spent shotgun shells.

In December 2024, a federal grand jury charged Mr. Jordan with being a felon in possession of a firearm, for which the maximum sentence is 15 years.  *See* 18 U.S.C. § 924(a)(8).  He pled guilty without a plea agreement.

In June 2025, the United States Probation Office released its final presentence investigation report (PSR).  The PSR calculated Mr. Jordan's total offense level at 17 after various adjustments based on the circumstances of the charged offense and his acceptance of responsibility.

The PSR also detailed Mr. Jordan's criminal history.  This included drug offenses at the age of 19, for which he was fined, and driving under the influence at the age of 32, for which he received a one-year suspended sentence.  In between those offenses, he was convicted three separate times for domestic abuse of E.J.  His first conviction was for punching her in the face while she was holding their three-

month-old baby. He was convicted a second time for strangling her in the presence of four minor children. And he was convicted a third time for punching E.J. repeatedly in the back of the head and threatening to beat her after she said she was calling the police. Again, this happened in the presence of minor children, including their three-year-old daughter, whom E.J. was holding at the time of the assault. Mr. Jordan received either a suspended or deferred sentence for each conviction, so he served no prison time.

Mr. Jordan's criminal history resulted in a criminal history category of II. Based on that category and his total offense level of 17, the PSR applied U.S.S.G. § 2K2.1 (the applicable guideline for violations of § 922(g)(1)) and calculated an advisory sentencing range of 27 to 33 months in prison.

After the submission of the PSR, the parties each filed a sentencing memorandum. Mr. Jordan emphasized the significant trauma he suffered in childhood, his struggles with substance abuse, and his mental health problems. The government's memorandum focused on the factors listed in 18 U.S.C. § 3553(a) and, based on those factors, requested an upward variance to 120 months in prison.

At the sentencing hearing, the district court heard argument from Mr. Jordan's counsel, who requested a within-guidelines sentence, and then allowed Mr. Jordan an opportunity to address the court. The district court then stated that the advisory guidelines range of 27 to 33 months did not adequately satisfy the factors to be considered under § 3553(a). After examining those factors, the court concluded they supported a 120-month sentence. This appeal followed.

4

## II.  Discussion

In reviewing a sentence for substantive reasonableness, "[w]e must determine whether the length of the sentence is reasonable given all the circumstances of the case in light of the § 3553(a) factors." *See United States v. Kaspereit*, 994 F.3d 1202, 1214 (10th Cir. 2021) (internal quotation marks omitted).  "We reverse only if the district court abused its discretion in weighing permissible § 3553(a) factors in light of the totality of the circumstances." *Id.* (internal quotation marks omitted).

The district court has "an unquestionable institutional advantage over an appellate court to consider whether the facts of an individual case justify a variance," *United States v. Huckins*, 529 F.3d 1312, 1317 (10th Cir. 2008), so we "give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance," *Gall v. United States*, 552 U.S. 38, 51 (2007).  "The fact that [we] might reasonably have concluded that a different sentence was appropriate is insufficient to justify the reversal of the district court." *Id.*  Thus, "we will affirm so long as the district court's decision falls within the realm of the rationally available choices." *Kaspereit*, 994 F.3d at 1214 (brackets and internal quotation marks omitted).  "A cogent and reasonable explanation for a sentence makes that sentence more likely within the bounds of reasonable choice, while a limited, brief, or inconsistent explanation can hinder our review of a sentence's substantive reasonableness." *United States v. Guevara-Lopez*, 147 F.4th 1174, 1183 (10th Cir. 2025) (internal quotation marks omitted).

In Mr. Jordan's case, the district court's explanation for the sentence was cogent and reasonable. It began its analysis of the § 3553(a) factors by acknowledging Mr. Jordan's childhood trauma, poor mental health, and substance abuse. It nevertheless concluded that, in light of the totality of the circumstances, the advisory guideline range did not satisfy the § 3553(a) factors.

Concerning the seriousness of the offense and its nature and circumstances, *see* §§ 3553(a)(1) & (a)(2)(A), the district court observed that Mr. Jordan had threatened to get into a shootout with police and kill his estranged wife; fired a stolen shotgun through her bedroom window; and on two occasions pointed the same shotgun at other people, including a mother and daughter who were complete strangers to Mr. Jordan. The court further noted that the discharge of the firearm was an "aggravating factor" that required the need to promote respect for the law. R. vol. 3 at 17; *see* § 3553(a)(2)(A).

Regarding Mr. Jordan's history and characteristics, *see* § 3553(a)(1), the district court discussed Mr. Jordan's pattern of domestic violence, which included three separate convictions for physically assaulting his wife, each time in the presence of children. The court also noted that Mr. Jordan's domestic abuse had escalated to firearms and gunfire and that Mr. Jordan's estranged wife was still frightened and uncertain of her safety, thus highlighting the need to protect the public from further crimes, *see* § 3553(a)(2)(C). Finally, the court acknowledged that Mr. Jordan had not served prison time for his domestic abuse convictions but that a

6

significant sentence was still warranted to afford adequate deterrence, *see*

§ 3553(a)(2)(B).

After its examination of the § 3553(a) factors, the district court concluded that

an upward variance was warranted.  It observed that the applicable statutory

maximum was 180 months, which would be reserved "for the most aggravated felon

in possession case imaginable," while sentences "[s]omewhere far lower than that

[would be for] cases that are far more mitigated and less serious."  R. vol. 3 at 16.

The district court concluded that in the circumstances of Mr. Jordan's case, a 120-

month sentence—still 60 months shy of the statutory maximum—was not

unreasonable.  The district court's conclusion was not an abuse of discretion, and its

decision fell "within the realm of the rationally available choices."  *Kaspereit*,

994 F.3d at 1214 (brackets and internal quotation marks omitted).

Mr. Jordan contends otherwise, relying on *United States v. Guevara-Lopez*,

147 F.4th 1174.  In that case, the defendant's sentencing guideline range was 24 to 30

months, and the district court varied upward to the statutory maximum of 60 months.

*Id.* at 1178.  This court found the sentence substantively unreasonable, in part

because "the district court inadequately explained the significant upward variance."[2]

*Id.* at 1193.  In so holding, the court pointed to statistics from the U.S. Sentencing

---

[2] The court also found the sentence substantively unreasonable because the district court relied on incorrect information about pending state charges.  *Id.* at 1189–90.  The court noted that "where we have a significant upward variance, supported by only a few facts, the inaccuracy of even one fact may tip the scale, rendering the justification for that variance unreasonable."  *Id.* at 1190.  Mr. Jordan points to no such error in his case.

Commission's Judiciary Sentencing Information (JSIN) platform, which had been included in the PSR. *See id.* at 1185. The court emphasized that "we do not require district courts to consult Sentencing Commission data before imposing a sentence, nor do we require district courts to follow national statistics when imposing a sentence." *Id.* at 1188. Rather, "*[w]ithout an otherwise sufficient explanation* to justify the extent of the upward variance, [such] statistics highlight the potential sentence disparities that the district court failed to guard against." *Id.* (emphasis added); *see also id.* at 1193 ("The statistical disparities that we highlight merely demonstrate our concern with the significant upward variance given the inadequate explanation.").

Neither party presented any statistics at Mr. Jordan's sentencing, but he asks this court to take judicial notice of JSIN statistics showing that for defendants sentenced in similar circumstances (i.e., sentenced pursuant to § 2K2.1 with a final offense level of 17 and a criminal history category of II) the average prison sentence was 25 months, and the median was 27 months. As *Guevara-Lopez* confirms, however, a district court is under no obligation to consult such statistics where it provides a sufficient explanation for the upward variance, as the district court did here. Mr. Jordan's resort to statistics is therefore of no effect. And even if the district court had the benefit of the statistics on which Mr. Jordan now relies, the district court's reasoning "would have provided a sensible basis to reject the national average as a benchmark for [Mr. Jordan's] sentence." *United States v. Doty*, 150 F.4th 1351, 1358 (10th Cir. 2025).

Finally, while Mr. Jordan acknowledges that the nature and circumstances of the offense are "undoubtedly serious," Opening Br. at 15, he argues the advisory guidelines already took that factor into account by increasing the offense level under U.S.S.G. § 2K2.1(b).  This argument appears to be an attack on the procedural reasonableness of the sentence.  *See United States v. Alapizco-Valenzuela*, 546 F.3d 1208, 1222 (10th Cir. 2008) (observing that defendant's argument that district court erred in using same facts that supported an enhancement to justify an upward variance was a procedural challenge).  Mr. Jordan did not raise this procedural challenge below, so we may only review it for plain error.  *See id.*  And because he has not argued for plain error, he has waived this argument.  In any case, "district courts have broad discretion to consider particular facts in fashioning a sentence under 18 U.S.C. § 3553(a), even when those facts are already accounted for in the advisory guidelines range."  *United States v. Barnes*, 890 F.3d 910, 921 (10th Cir. 2018) (brackets and internal quotation marks omitted).

### III.  Conclusion

We affirm the sentence imposed by the district court.

Entered for the Court

Allison H. Eid
Circuit Judge